STATE v. HENRY DUDLEY.

(Filed 26 October, 1921.)

**1. Constitutional Law— Legislature— Delegated Authority—Administrative Board—Municipal Corporations—Criminal Law.**

While the Legislature may not delegate to a duly legalized administrative board power to make rules and regulations and prescribe a criminal punishment for their violation, it has the power to delegate to such a board the power to establish the pertinent facts or conditions upon the violation of which the statute itself imposes the punishment; and the principles upon which this power to delegate may not be exercised only in case of municipal corporations when in the exercise of governmental functions on local matters, have no application.

**2. Same—Fish Commission.**

It is within the power of the Legislature to create a board of fish commissioners and delegate to it the authority to make rules and regulations as to the time, manner, and place of fishing, in the various waters of this State, and make it an offense punishable as a misdemeanor for the violation of such regulations, when well defined and sufficiently advertised and the offense established according to law.

**3. Indictment—Form—Fish Commission—Statutes.**

Where the indictment sufficiently sets forth the facts under which the defendant is charged with the offense of violating the regulations of the board of fish commissioners, passed at various times, contrary to the form thereof, it is sufficient to sustain a conviction, though in better form had it added "contrary to the statute in such case made and provided," but this is not required under the provisions of C. S., 4625.

**4. Fish Commission—Jurisdiction—"Waters of the State"—Specific Localities—Statutes—Interpretation.**

The jurisdiction of the board of fish commissioners over "the several waters of the State" is not confined to those specifically mentioned in C. S., 1878, for they are only mentioned because the Legislature thought it desirable or necessary to make special provision for those places.

**5. Fish Commission — Jurisdiction — Escallops— Words and Phrases— Statutes.**

The taking of escallops from the "several waters of the State" expressly comes within the authority conferred by statute on the board of fish commissioners, and is also likewise included in the expression "mollusca," being "of the species pectinidae." C. S., 1865 to 2078.

APPEAL by defendant from *Horton, J.,* at March Term, 1921, of CAR-TERET.

Criminal action. Defendant was convicted under the following bill of indictment:

"The jurors for the State upon their oath present: That Henry Dudley, late of the county of Carteret, on 28 December, 1920, did willfully, unlawfully and feloniously take escallops with drags or scrapes in that

territory in Bogue Sound lying between Spooners Point and Brant Island, the same being that territory designated as unlawful or forbidden grounds, in violation of orders, rules, regulations, etc., of the Fisheries Commission Board at meeting held 7 October, 1919, and known as Regulation No. 13, contrary to the form of regulations of said commission board and against the peace and dignity of the State. And the jurors for the State upon their oaths aforesaid do further present: did willfully, unlawfully and feloniously violate Regulation 5 of the orders, rules and regulations of the Fisheries Commission Board, passed at various meetings held from 29 April, 1915, to 5 July, 1920, contrary to the form of the regulations of said Fisheries Commission Board."

From judgment on the verdict, the defendant appealed, assigning for errors chiefly: the refusal to quash the bill for that same did not state a criminal offense; refusal to instruct the jury that on the entire evidence if accepted by the jury no criminal offense has been established.

*Thomas W. Bickett, Attorney General Manning, and Assistant Attorney-General Nash for the State.*

*E. H. Gorham, C. R. Wheatley, O. H. Guion, Charles L. Abernathy, for defendant.*

HOKE, J. In recognition of the great importance of fish and fishing industries connected therewith in the public waters of the State as a source of food supply to the people and of the impelling necessity for authoritative and intelligent regulation concerning them, the General Assembly has made elaborate statutory provisions on these subjects, the same, general and special, appearing principally in Consolidated Statutes, ch. 37, secs. 1865 to 2078, inclusive. And recognizing further that it is impossible in a fixed and formal statute to foresee and provide for all the administrative details sure to be required under such extended and ever varying conditions, the legislation referred to creates a commission to be termed the "Fisheries Commission Board," giving it the general control of the subjects and in addition to other special provisions, conferring general powers in terms as follows:

"The Fisheries Commission Board is hereby authorized to regulate, prohibit, or restrict in time, place, character, or dimensions, the use of nets, appliances, apparatus, or means employed in taking or killing fish; to regulate the seasons at which the various species of fish may be taken in the several waters of the State, and to prescribe the minimum sizes of fish which may be taken in the said several waters of the State, or which may be bought, sold, or held in possession by any person, firm, or corporation in the State; and such regulations, prohibitions, restrictions and prescriptions, after due publication, which shall be construed to be once a week for four consecutive weeks in some newspaper in North Caro-

lina, shall be of equal force and effect with the provisions of this act; and any person violating the provisions of this section shall be guilty of a misdemeanor, and, upon conviction, shall be fined or imprisoned, at the discretion of the court."

And in further enforcement of the law, sec. 1901 makes provision as follows:

"Upon failure of any person, firm, or corporation to comply with any of the provisions of this article, or any of the fisheries laws, any license issued to any such person, firm or corporation may be revoked by the fisheries commission, and upon satisfactory settlement may be reinstated, with the consent of the board. All such persons violating the provisions of this article or of the fisheries law shall be guilty of a misdemeanor."

Under the powers so conferred and in promotion of the general purposes of the statute, the Fisheries Commission Board made and established a formal rule or regulation, which prohibited the taking of escallops with drags or scrapes in a certain portion of Bogue Sound between Spooner's Point and Brant Island, and designating such locality as unlawful and forbidden territory. And on the trial there was evidence of the State tending to show that at the time specified, the ground having been properly staked off as forbidden ground, defendant was employed in taking escallops in the manner prohibited, and on this evidence, accepted by the jury, defendant was duly convicted of the offense charged in the bill, and from judgment on the verdict, has appealed.

It was chiefly and very earnestly contended before us that this conviction cannot be sustained because it presents an unwarranted attempt to delegate legislative power. It is well recognized that except in the case of municipal corporations when in the exercise of governmental functions on local matters, legislative power may not be delegated. But if it be conceded that the board in question here, the Fisheries Commission Board, as a mere administrative board does not come within the exception stated, it is firmly established in this jurisdiction and fully recognized in authoritative cases elsewhere that, though legislative powers may not be in strictness delegated to a board of that character, it is fully competent for the Legislature to delegate to such a board the power to "establish the pertinent facts or conditions upon which a statute makes its own action depend." This statement of the principle taken from 8 Cyc., p. 830, was directly approved and applied in *S. v. R. R.,* 141 N. C., 846-851, a decision upholding the conviction of defendant for violation of the administrative regulations of our Department of Agriculture. And a forcible and striking illustration in approval of the same position is presented in the recent case of *S. v. Hodges,* 180 N. C., 751, sustaining regulations of the same department in reference to eradication of cattle ticks.

It has been applied also in reference to regulations of the Health Department as in the case of compulsory vaccination. *Morgan v. Stewart,* 144 N. C., 424, citing *S. v. Hay,* 126 N. C., 999; *Hutchins v. Durham,* 137 N. C., 68; *Morris v. Columbus,* 102 Ga., 792.

And in *Express Co. v. R. R.,* 111 N. C., 463, it was fully recognized as justifying the Legislature in delegating to the Corporation Commission the power to establish transportation rates, etc. Similar decisions resting upon the same principle appear in *U. S. v. Grimand,* 220 U. S., 506; *Isenhour v. The State,* 157 Ind., 417, and in many other authoritative cases, and may be considered as the generally accepted rule on the subject.

In the *Grimand case, supra,* it was held, among other things, "That Congress cannot delegate legislative power (citing *Field v. Clark,* 143 U. S., 692), but the authority to make administrative rules is not a delegation of legislative power, and such rules do not become legislation, because violations thereof are punished as "public offenses." And so it is here. The commission, as stated, under authority conferred, have established the regulation that these escallops shall not be taken in drags in certain designated localities. And the statutes referred to enact that to take these fish or mollusca, contrary to this administrative rule shall constitute a misdemeanor, and it is on this that the conviction is lawfully made to rest.

It is argued in support of the defendant's position that the indictment is for violating the rule and not otherwise, but the suggestion is without merit. It may have been the better form to have added to the bill that the alleged default was also "contrary to the statute in such case made and provided," but this if it be a defect is one cured in express terms by our statute of jeofails, C. S., 4625.

It is further insisted for defendant that the locality to which this regulation applies is nowhere mentioned or designated in the law and the same is not therefore included in the powers conferred upon the board. But a perusal of the statute and more particularly section 1878, which appertains more directly to the question, will disclose that the jurisdiction of the board extends to all the public waters of the State or over which it has control. "The several waters of the State" is the precise language of the section referred to, and the numerous portions of the law in which places are expressly mentioned are not in restriction of the general words of the principal section, but these places are only mentioned because special provision is made as being desirable or necessary for those places, and this objection also must be overruled.

It cannot for a moment be maintained that escallops, the subject-matter of the inquiry are not within the powers conferred. In the portion of the statute defining the terms and subjects of the chapter in question,

the word "fish" is made to include "porpoises, and other marine mammals, fishes, mollusca, and crustaceans." Not only do escallops come within this comprehensive definition, being a "mollusca of the species pectinidæ," but in a later part of the chapter, they are expressly mentioned as being within its provisions. This objection therefore is overruled.

We have given the case most careful consideration and owing to the very great importance of this industry to the State and its people, it is gratifying that the conviction can be upheld in accord with accepted principles of constitutional and statutory construction. It is a subject that has deservedly received the fullest consideration of our Legislatures and under the capable, courageous, and impartial enforcement of the law that has prevailed for the past several years, there is reason to believe that substantial and ever increasing benefits may be expected.

There is no error and the judgment below is affirmed.

No error.