STATE *vs.* GEORGE NELSON.

JULY 16, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Shell Fisheries. Constitutional Law.*

Pub. Laws, cap. 896, § 3, passed February 8, 1901, as amended by section 3, of chapter 897, authorizing the towns of South Kingstown and Narragansett to open and maintain a breachway between Point Judith Pond and the ocean, and to lease the land as private and several oyster fisheries, is not obnoxious to Cons. R. I. art. I, § 17, by providing for the regulation of such shell fisheries for the benefit of the towns rather than for the benefit of the people of the State, and by not reserving any part for a free and common oyster fishery, and by providing for the creation of private and several oyster fisheries in said pond; nor to art. IV, § 2, as a delegation of legislative power.

Where it appeared that the former breachway had been closed by natural causes so that the oyster beds in the pond had ceased to exist, and it would be necessary to incur large expense in opening the breachway, there was no impropriety in permitting the towns undertaking the improvement to reimburse themselves out of the revenue to be derived from leasing the fisheries to be created, since the State was benefited by making it a town debt.

The legislature may delegate the execution of their regulations in regard to the fisheries of the State to any board or body they may deem advisable.

The license granted by the State to the towns under said act was revocable at the pleasure of the State.

CRIMINAL COMPLAINT. Heard on constitutional questions certified to the court.

DUBOIS, C. J. This is a criminal complaint, brought by George A. Griffin, of South Kingstown, in the county of Washington, in the name and behalf of the State, wherein it is charged that the defendant "did within certain tide-waters, to wit, Point Judith Pond, so-called, certain shell-fish of the prop-

erty of the said George A. Griffin, to wit, one peck of oysters, then and there being found upon a certain tract or parcel of land covered by the waters of Point Judith pond and which said tract or parcel of land so covered as aforesaid, is by the said town of South Kingstown leased to the said George A. Griffin, unlawfully, wilfully, and wrongfully, take and carry away from the said tract or parcel of land, without the permission of the said George A. Griffin, lessee as aforesaid first being had and obtained, against the Statute and the peace and dignity of the State." Upon arraignment before the District Court of the Second Judicial District, the defendant pleaded not guilty, and upon trial was found guilty by said court, and the defendant appealed to the Superior Court, wherein upon trial he was found guilty by a jury.

In the trial before the jury the constitutionality of certain laws was brought in question, and the following constitutional questions were certified to this court, as appears by the certificate thereof, which reads as follows:

"In the above entitled cause, the constitutionality of Section 3 of Chapter 896 of the Public Laws of the State of Rhode Island, passed February 8, 1901, as amended by Section 3 of Chapter 897 of said Public Laws, having been brought in question in the trial of said cause in this court on an objection to the admission of testimony, and the defendant in said cause having been found guilty, it is hereby ordered that the following constitutional questions, together with the record of the case and so much of the transcript of the testimony as pertains to the constitutional question, shall be certified and transmitted forthwith to the Supreme Court for decision.

"Question 1. Is Section 3 of Chapter 896 of the Public Laws of the State of Rhode Island, passed February 8, 1901, as amended by Section 3 of Chapter 897 of said Public Laws, which authorizes the leases by virtue of which complainant claims property in the oysters taken by the defendant, in conflict with Section 17 of Article 1 of the Constitution of the State of Rhode Island, in that it provides for regulating the

shell fisheries in Point Judith Pond by leasing the land in the town of South Kingstown covered by the waters of said pond at low tide for the benefit of said town of South Kingstown, or the district of Narragansett, as the case may be, rather than for the benefit of the people of the State of Rhode Island as a whole?

"Question II. Is Section 3 of Chapter 896 of the Public Laws of the State of Rhode Island, passed February 8, 1901, as amended by Section 3 of Chapter 897 of said Public Laws, which authorizes the leases by virtue of which complainant' claims property in the oysters taken by the defendant, in conflict with Section 2 of Article 4 of the Constitution of the State of Rhode Island, for the reason that it delegates the power to regulate the shell fisheries in Point Judith Pond in South Kingstown to the town council of the town of South Kingstown?

"Question III. Is Section 3 of Chapter 896 of the Public Laws of the State of Rhode Island, passed February 8, 1901, as amended by Section 3 of Chapter 897 of said Public Laws, which authorizes the leases by virtue of which complainant claims property in the oysters taken by the defendant, in conflict with Section 17 of Article I of the Constitution of the State of Rhode Island, because said Section 3 permits the leasing of so much of the land covered by the waters of said Point Judith Pond at low tide as lie within the limits of said town without reserving any part thereof for a free and common oyster fishery?

"Question IV. Is Section 3 of Chapter 896 of the Public Laws of the State of Rhode Island, passed February 8, 1901, as amended by Section 3 of Chapter 897 of said Public Laws, which authorizes the leases by virtue of which complainant claims property in the oysters taken by the defendant, in conflict with Section 17 of Article 1 of the Constitution of the State of Rhode Island, in that it provides for the creation by lease of private and several shell fisheries in said Point Judith Pond?"

Pub. Laws, cap. 896, passed February 8, 1901, reads as follows:

"CHAPTER 896.

"An act authorizing the town of South Kingstown and the district of Narragansett to open and maintain a breachway or channel between Point Judith pond and the ocean, and to protect the shell fisheries therein.

"*It is enacted by the General Assembly as follows:*

"SECTION 1. The town of South Kingstown and the district of Narragansett are hereby authorized and empowered to cause a breachway or channel to be opened between Point Judith pond and the ocean and to keep and to protect such breachway or channel so opened.

"SEC. 2. Said town and said district are each hereby authorized and empowered to appropriate and use for the purposes above mentioned such sum or sums of money as they may deem necessary or advisable, not to exceed twenty-five thousand dollars, respectively, and to hire said sum or sums of money, for said purposes, and to issue the notes or bonds of said town or district respectively therefor, in such form and upon such terms as the electors of said town or said district may determine.

"SEC. 3. The town council of said town of South Kingstown and the district council of said district of Narragansett respectively are hereby authorized to regulate the shell fisheries in said Point Judith pond by leasing so much of the land covered by the waters of said pond at low tide as lies within the limits of said town or of said district, in the name of and for the benefit of said town or of said district respectively, by public auction or otherwise, in lots of not less than one acre nor more than three acres each, to any suitable person, being an inhabitant of this state, subject to the rights of the riparian owners therein, as a private and several shell fishery, to be used for the protecting, cultivating, producing, planting, growing, digging, and taking of quahaugs, oysters, mussels, scollops, or other shell-fish, therein or thereon, in such manner and upon such terms and conditions as they may deem proper, but not

for a longer term than ten years, or for a shorter term than one year.

"SEC. 4. Any person taking any shell-fish from the grounds ·of the lessees mentioned and provided for in section 3 of this act, without the permission of the lessees or in any way interfering with the said lessees in the exercise of said rights, shall be fined twenty dollars for each offence, one-half thereof to the use of the complainant and one-half thereof to the use of the .state.

"SEC. 5. This act shall take effect immediately upon its passage, and all acts or parts of acts inconsistent herewith are hereby repealed."—and Pub. Laws, cap. 897, passed March 27, 1901, reads as follows:

## "CHAPTER 897.

"An act in amendment of an act entitled 'An act authorizing the town of South Kingstown and the district of Narragansett to open and maintain a breachway or channel between Point Judith pond and the ocean, and to protect the shell fisheries therein,' passed at the January session of the General Assembly, A. D. 1901.

"*It is enacted by the General Assembly as follows:*

"SECTION 1. Section 3 of an act entitled 'An act authorizing the town of South Kingstown and the district of Narragansett to open and maintain a breachway or channel between Point Judith pond and the ocean, and to protect the shell fisheries therein,' passed at the January session of the General Assembly, A. D. 1901, is hereby amended so as to read as follows:

"'SEC. 3. The town council of said town of South Kingstown and the district council of the district of Narragansett, respectively, are hereby authorized to regulate the shell fish-·eries in said Point Judith pond by leasing so much of said land covered by the waters of said pond at low tide as lie within the limits of said town or of said district in the name of and for the benefit of said town or of said district, respectively, by public

auction or otherwise, in lots of not less than one acre nor more
than three acres each, to any suitable person being an inhabi-
tant of this state, subject to the rights of the riparian owners
therein, as a private and several shell fishery, to be used for the
protecting, cultivating, producing, planting, growing, digging,
and taking of quahogs, oysters, mussels, scallops, or other shell-
fish therein or thereon, in such manner and upon such terms
and conditions as they may deem proper, but not for a longer
term than ten years, or for a shorter term than one year.
Provided, also, that said district of Narragansett is hereby
authorized *to lease* to said town of South Kingstown so much of
the land covered by the waters of said pond at low tide as lies
within the limits of said district, for the above-named purposes,
upon such terms and for such length of time as may be agreed
upon by said town and said district together.'

"SEC. 3.   All acts and parts of acts inconsistent herewith
are hereby repealed, and this act shall take effect from and
after its passage."

It was admitted at the hearing that, prior to the opening of
said breachway in accordance with said chapter 896, the same
had been closed up by the action of the elements with such
effect that the natural oyster beds formerly found in said pond
had ceased to exist for all practical purposes.   That the expense
of making the proposed improvement under said act would be
very large is indicated in the act itself, and that it would be
necessary for the towns therein named to incur a large indebted-
ness in opening said breachway is also apparent from the terms
of the act.   We see no impropriety in permitting the towns
undertaking the improvement to re-imburse themselves out of
the revenue to be derived from the leasing of the fishery created
by the opening of the breachway.   The people of the whole
State are benefited by the fact that the indebtedness incurred
under the act is not a State debt, but is a town debt.   There is
in said acts no delegation of legislative power.   The legislature
may delegate the execution of their regulations in regard to the
fisheries of the State to any board or body they may deem
advisable.   *State* v. *Cozzens,* 2 R. I. 564; *Payne & Butler* v.

*Prov. Gas Co.*, 31 R. I. 295. But this is even less than that; the act permits the town therein named to create and then manage a fishery during the pleasure of the General Assembly. The license therein given may be recalled at any time, but it would be a question for the legislature whether this ought to be done until the towns or town had been re-imbursed for the outlay incurred by reason of the act, or whether compensation for the outlay should be made out of the State treasury.

All the questions must be answered in the negative, for the reason that the legislature have plenary power in the premises. See *Payne & Butler* v. *Prov. Gas Co., supra.*

Having thus decided all the questions so certified to us, the papers in the case will be remitted to the Superior Court, with our decision certified thereon, for further proceedings.

*William B. Greenough, Attorney-General, Harry P. Cross, Second Assistant Attorney-General,* for State.

*Percy W. Gardner,* for defendant.

