[No. 17074. *En Banc.* May 11, 1922.]

## C. S. VAIL, *Appellant*, v. E. A. SEABORG et al., Respondents.[1]

CONSTITUTIONAL LAW (32)—LEGISLATIVE POWER—DELEGATION—STATE FISHERIES BOARD. It is not an unlawful delegation of legislative power to authorize (Rem. Comp. Stat., §§ 5752, 10867) the state fisheries board to promulgate rules and regulations governing the taking of food fishes, and to provide (Id., § 10869) that the present laws shall remain in force as rules of the board until amended, modified or revoked by the board (TOLMAN, J., dissenting).

FISH (4)—TITLE TO—POWER TO PROTECT AND REGULATE. It is within the police power to provide for the regulation of the fishing industry through an administrative board; and the fact of being engaged in the business of taking fish does not give fishermen any property in fish, as they belong to all the people of the state.

SAME (4). Regulations for the taking of food fish in Puget Sound do not violate the compact between Oregon and Washington (Rem. Comp. Stat., § 5770) as to fishing in the Columbia River.

CONSTITUTIONAL LAW (134)—DUE PROCESS OF LAW—REGULATION OF FISHING. One holding a state fishing license cannot object that Rem. Comp. Stat., §§ 5752, 5753, 10866-10869, authorizing the state fisheries board to make rules prohibiting the taking of fish, constitutes a taking of property without due process of law; as a license confers no property rights.

[1]Reported in 207 Pac. 15.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered December 1, 1921, dismissing an action to enjoin the enforcement of certain regulations and orders of the state fisheries board, after sustaining a demurrer to the complaint. Affirmed.

*Thomas Smith, C. E. Abrams,* and *Will J. Griswold,* for appellant.

*The Attorney General,* for respondents.

HOVEY, J.—This is an appeal from a judgment of dismissal after the sustaining of a demurrer to a complaint whereby appellant sought to enjoin the respondents from enforcing the rules and orders of the state fisheries board, and particularly certain orders of the respondent board prohibiting the taking of salmon from the waters of Puget Sound from the 26th day of August to the 15th day of September, and from the 26th day of October to the 30th day of the following April, by any fishing appliance or any means whatsoever except with hook and line, and prohibiting the sale and disposal of any salmon which has been so taken.

It is alleged in the complaint that appellant is engaged in the business of fishing for salmon with gill nets in the waters of Puget Sound, and has an investment in the form of fishing boats and appliances devoted to this particular purpose, and that this is his only means of livelihood, and that a great many other citizens of this state are similarly situated. It is alleged that the enforcing of these orders will deprive the plaintiff and others similarly situated of their means of livelihood.

There are a good many other allegations to the same effect, but we have stated enough to show a sufficient injury if the appellant is in a position to complain.

It is alleged in the complaint, and urged upon the argument, that the orders in question are void because

the respondent board which made them was formed and acts by virtue of the provisions of § 108 *et seq.* of ch. 7 of the Laws of 1921 of this state, being a portion of the act known as the administrative code. The portions of ch. 7 relative to this subject-matter are as follows:

"Sec. 108. The food fishes in the waters of the state of Washington shall be preserved, protected, and perpetuated, and to that end such food fishes shall not be taken at such times or places, by such means, or in such manner, as will impair the supply thereof. Rem. Comp. Stat., § 10866.

"Sec. 109. The governor shall have the power, and it shall be his duty, to appoint three citizens of this state who have a general knowledge of fish and fisheries of the waters of and adjacent to the state of Washington, as members of, and who shall constitute, the state fisheries board to serve at the pleasure of the governor, and who shall receive their actual and necessary expenses while engaged in the performance of their duties. Rem. Comp. Stat., § 10867.

"Sec. 110. The state fisheries board shall have the power to investigate the habits, supply, and economic uses of, and to classify, the food fishes in the waters of the state of Washington and, from time to time, make, adopt, amend, and promulgate rules and regulations governing the taking thereof, (1) fixing the times when the taking of the several classes of, and all, food fishes is prohibited, (2) specifying and defining the places and waters in which the taking of the several classes of, and all, food fishes is prohibited, and (3) defining, fixing and prescribing the kinds of gear, appliances, or other means that may be used in taking the several classes of food fishes, and the times, places, and manner of using the same. Rem. Comp. Stat., § 10868.

"Sec. 111. All laws relating to the matters referred to in the last preceding section are hereby repealed as statutes, and are hereby constituted and declared to be operative and to remain in force as the rules and regulations of the state fisheries board, until such time as they or any of them are amended, modified, or revoked

by the state fisheries board: *Provided,* That holders of existing fishing locations shall hold and enjoy the same with the exclusive right to operate their fishing appliances thereon under the rules and regulations of said board at all times when fishing in the waters where such locations are situated shall be permitted." Rem. Comp. Stat., § 10869.

At the same session the legislature passed an act, the same being ch. 180 of the laws of that session (Laws of 1921, p. 710), which contains the following sections:

"Sec. 10. The food fishes in the waters of the state of Washington shall be preserved, protected and perpetuated, and to that end such food fishes shall not be possessed, sold or disposed of at such times as will impair the supply thereof. Rem. Comp. Stat., § 5752.

"Sec. 11. The state fisheries board shall have the power from time to time to make, adopt, amend and promulgate, in the manner provided by law, rules and regulations governing the possession, disposal and sale of food fishes within the state of Washington, whether taken within or without the state of Washington, fixing the times when the possession, disposal or sale of the several classes of, or all, food fishes is prohibited." Rem. Comp. Stat., § 5753.

Prior to the enactment of the statutes in question, there had been in force a great many laws of this state prescribing in considerable detail the operation of the fishing business. It will be noted that, by the provisions of § 111 (Laws of 1921, ch. 7) these laws are all repealed, but they are continued as rules and regulations until such time as the new board shall see fit to change the same. The main contention of appellant is that the acts in question constitute a delegation of legislative power, and an able argument is presented to the general effect that the acts in question violate the recognized rule that a legislature cannot delegate its power to legislate to a board or commission.

The recognized distinction in matters of this kind, however, is between power to legislate and the power to administer. This is well stated in a case cited by appellant. *State v. Normand,* 76 N. H. 541, 85 Atl. 899, Ann. Cas. 1913E 996:

" 'Congress cannot delegate its power to make a law, but it can make a law to delegate a power to an administrative officer to determine a fact or condition of affairs in regard to which the law makes its own action depend.' "

The great increase in the duties of the governing bodies has brought about a demand that matters in which the general public are interested shall be governed in their details to an extent impracticable to be attended to by the legislative bodies which meet only biennially, and statutes of this character are passed to meet the situation. The fact that legislatures formerly attended to the details does not change the character of such details from that of an administrative character. By § 108 the purpose of the legislature is declared. It is a well known fact that the salmon industry of the state is rapidly disappearing and the legislature declares its purpose to protect and perpetuate it.

That this is a sufficient act of legislation is supported by the decisions of this court in *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938; *Spokane Hotel Co. v. Younger,* 113 Wash. 359, 194 Pac. 595; *Carstens v. De Sellem,* 82 Wash. 643, 144 Pac. 934; *State ex rel. McBride v. Superior Court,* 103 Wash. 409, 174 Pac. 973; *State v. Storey,* 51 Wash. 630, 99 Pac. 878; *Larson v. Rice,* 100 Wash. 642, 171 Pac. 1037; and a very persuasive parallel was drawn by the Attorney General of § 108 of this act (Rem. Comp. Stat., § 10866) with § 2 of ch. 174 of the Laws of 1913, p. 602

(Rem. Comp. Stat., § 7624), the latter being a section of the minimum wage law.

The former acts were an exercise of the police power and dealt with contract rights between individuals. Whether § 108 would be a sufficient act of legislation in all cases, we are not called upon to decide in this case.

The food fish in the waters of the state belong to the people of the whole state, and the state through its legislature has the same right of regulation and control of this property that it has of any other state property. The fact that appellant and others are engaged in the business of taking fish does not give them any property in the fish prior to taking. The right exists in the state in the first place to say whether any fish whatever shall be taken. By the act in question the right to fish is provided for, but only under such regulations as shall be found by a properly constituted board to preserve and perpetuate the supply. We sustained a similar act in *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938, relative to the regulation of game by county commissioners. We consider the following cases in point: *Portland Fish Co. v. Benson,* 56 Ore. 147, 108 Pac. 122; *Ex parte Fritz,* 86 Miss. 210, 38 South. 722, 109 Am. St. 700; *Commonwealth v. Sisson,* 189 Mass. 247, 75 N. E. 619, 109 Am. St. 630, 1 L. R. A. (N. S.) 752; *State v. Nelson,* 31 R. I. 264, 77 Atl. 170. In *United States v. Grimaud,* 220 U. S. 506, 31 S. Ct. 480, the supreme court of the United States uses the following language:

"To pasture sheep and cattle on the reservation, at will and without restraint, might interfere seriously with the accomplishment of the purposes for which they were established . . .

"In the nature of things it was impracticable for Congress to provide general regulations for these various and varying details of management. Each reservation had its peculiar and special features; and in au-

thorizing the Secretary of Agriculture to meet these local conditions Congress was merely conferring administrative functions upon an agent, . . .

"From the beginning of the government various acts have been passed conferring upon executive officers power to make rules and regulations—not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, . . ."

A very recent case is *State v. Dudley,* 182 N. C. 822, 109 S. E. 63. In this case the supreme court of North Carolina sustained an act in all respects similar to the act now under consideration, with the exception that the North Carolina act provides for giving notice of the regulations before they become effective, but this latter provision has no bearing upon the question of whether there is a delegation of legislative power, and notice of regulations is not necessary to due process. *Spokane Hotel Co. v. Younger, supra.*

We conclude that the act in question is not invalid as a delegation of legislative power.

It is also urged that the orders are void because not enacted under the requirements prescribed for legislative acts; but as we conclude the orders are of an administrative character, it is not necessary to further discuss this question.

It is also contended that the orders are void because of the provisions of § 116 of the Laws of 1915, p. 115, (Rem. Comp. Stat., § 5770), being the enactment entitled *"Joint Compact Between the States of Washington and Oregon."* This compact relates solely to the waters of Columbia river and its tributaries. It has no application to the subject-matter of this contro-

versy. It will therefore be unnecessary to inquire at this time what effect new legislation may have upon the compact.

It is also stated that the act in question violates the fifth and fourteenth amendments to the constitution of the United States. In his argument on this branch of the case appellant starts out by conceding that he has no property rights in or to the fish native to the waters of the state of Washington and that the legislature has unlimited power with reference to the same. But he contends that he has a license and that this is a franchise as defined in *Walker v. Stone,* 17 Wash. 578, 50 Pac. 488. The case in question dealt merely with the right of the holder of a license to a fishing location to prevent trespass from one not authorized to fish within the territory covered by the right. It is not claimed in the present case that the appellant has any license to fish contrary to valid rules and regulations. In *State v. Hals,* 90 Wash. 540, 156 Pac. 395, we decided that a fishing location license gave no vested property right in the holder as against the state.

The argument on this branch seems to proceed upon the basis that due process of law is not provided. In the case of *Geer v. State of Connecticut,* 161 U. S. 519, 16 S. Ct. 600, Mr. Justice White used the following language:

" 'The ownership being in the people of the state, the repository of the sovereign authority, and no individual having any property rights to be affected, it necessarily results that the legislature, as the representative of the people of the state, may withhold or grant to individuals the right to hunt and kill game or qualify or restrict, as in the opinions of its members will best subserve the public welfare. Stated in other language, to hunt and kill game is a boon or privilege, granted either expressly or impliedly by the sovereign authority—not a right inherent in each individual, and con-

sequently nothing is taken away from the individual when he is denied the privilege at stated seasons of hunting and killing game.' "

The same rule was announced in *State v. Tice,* 69 Wash. 403, 125 Pac. 168, 41 L. R. A. (N. S.) 469.

We conclude that the acts in question are a valid exercise of the legislative power of the state and that the orders complained of are a valid exercise of the administrative board created by ch. 7, p. 12, of the Laws of 1921; Rem. Comp. Stat., § 10759 *et seq.*

The judgment is affirmed.

PARKER, C. J., MITCHELL, FULLERTON, BRIDGES, and MAIN, JJ., concur.

HOLCOMB, J. (concurring)—I concur in the result solely upon the ground which I wish to make clear and positive, and which is all-sufficient, that the legislation in question is not of the character of that involved in *Spokane Hotel Co. v. Younger,* 113 Wash. 359, 194 Pac. 595, but is merely regulation of dealing with property belonging wholly to the people of the state. The details of such regulations are merely committed to administrative officers. Otherwise such delegation of powers could never be logically and constitutionally sustained.

TOLMAN, J. (dissenting)—While in hearty sympathy with the purpose sought to be accomplished by the so-called legislation here in question, I cannot concur with the majority. Admitting that food fish in the waters of the state belong to the whole people, and that the legislature has the same power of regulation and control thereof as it has of other state property, yet the fact remains that such power must be exercised in the regular and constitutional way, and can no more be delegated than the power to legislate upon other subjects.

It being conceded by the majority that, under all the authorities, the legislature cannot delegate its power to make the law, that question need not now be discussed.

Clearly, in dealing with food fish belonging to the state, the legislature might have forbidden the taking of such fish at all, or during the spawning season, for a limited time preceding such season, on or near the places of spawning, and fixed any other conditions for the perpetuation of the supply, and then left to an administrative board the duty of determining when the spawning season occurs at each particular place, how long it lasts, and like matters which require study and investigation; but here the whole subject-matter is attempted to be placed in the hands of an administrative body with full power to legislate on every phase of the question. To my mind, this is a clear attempt to delegate legislative power.

It was well said, in effect, by the *Attorney General* in oral argument, that the appellant's contentions would have been forceful twenty years ago, since which time the courts have gone far in the direction now taken by the majority. This is unfortunately true. By reason of the supposed good to be accomplished in each particular instance, the courts have indeed more and more departed from the firm foundation upon which representative government rests, and little by little, insidiously and almost imperceptibly, there has grown up a line of authorities, which, with slight exaggeration, seems to warrant the views of the majority; and unless a halt be called, by the same growth continued representative government will be wholly abolished. Believing that we have already reached the extreme limit, I can go no further, and therefore dissent.