[No. 18602. *En Banc.* January 8, 1925.]

## GEORGE N. McMILLAN et al., Appellants, v. E. A. SIMS et al., Respondents.[1]

CONSTITUTIONAL LAW (31)—FISH (4, 17)—DELEGATION OF LEGIS-LATIVE POWERS—REGULATION OF FISHING—POWERS OF STATE FISHERIES BOARD. Rem. Comp. Stat., § 10868, providing that the state fisheries board may classify the food fishes of the state, and specify and define the places and waters in which the taking of the several classes is prohibited, is a valid delegation of legislative powers and beyond judicial control.

CONSTITUTIONAL LAW (102)— FISH (17)— CLASS LEGISLATION — ORDERS OF STATE FISHERIES BOARD—DISCRIMINATION. Rem. Comp. Stat., § 10868, providing that the state fisheries board may classify the food fishes of the state, and specify and define the places and waters in which the taking of the several classes is prohibited, is not unconstitutional as denying the equal protection of the laws or granting special privileges and immunities, in violation of ·Const., Art. 1, § 12.

SAME (134)—FISH—DUE PROCESS OF LAW—REGULATION OF FISH-ING. Since fishermen have no property rights in fishing locations where they have been permitted to take fish in certain waters, they are not deprived of property without due process of law through an order of the fisheries board prohibiting the taking of fish in such waters, by virtue of Rem. Comp. Stat., § 10868, providing that the state fisheries board may classify the food fishes of the state and specify and define the places and waters in which the taking of the several classes is prohibited.

Overruling Id., 129 Wash. 516.

HOLCOMB, TOLMAN, and PEMBERTON, JJ., dissent.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered March 17, 1924, upon sustaining a demurrer to the complaint, dismissing an action for equitable relief. Affirmed.

*C. E. Abrams* and *Thomas Smith,* for appellant.

*The Attorney General, E. W. Anderson, Assistant, Warren J. Gilbert,* and *Walter H. Hodge,* for respondents.

[1]Reported in 231 Pac. 943.

## ON REHEARING.

PARKER, J.—The plaintiffs, McMillan and several other owners of fish traps located and heretofore operated by them in the waters of Skagit Bay, sought a decree from the superior court for Skagit county enjoining the defendants, Sims, Ramwell and Blake, constituting the state fisheries board, and certain other law enforcement officers, from enforcing an order made and promulgated by the state fisheries board establishing Skagit Bay and the arms thereof as a fish preserve, and prohibiting the taking of salmon from those waters except by hook and line. The defendants' demurrer to the complaint being by the court sustained for want of alleged facts stating cause for relief, and the plaintiffs electing to stand upon their complaint and not plead further, final judgment of dismissal was rendered against them, from which they have appealed to this court.

The case was heard upon the appeal in Department One of this court and a decision rendered by that department on May 5, 1924, reversing the sustaining of the demurrer and the judgment of dismissal rendered by the trial court. *McMillan v. Sims*, 129 Wash. 516, 225 Pac. 240. A rehearing was ordered before the court *En Banc* and the case is now before us for further consideration.

While we regard the statement of the facts made in the Department opinion as a fair and truthful summary of the allegations of the complaint, we think our present view of the correct disposition of the case will be more readily understood by a restatement of what we regard as the controlling facts of the case. Such facts may be summarized from the somewhat voluminous and involved allegations of the complaint read in the light of facts we may judicially notice, as follows: Skagit Bay is bounded on the east by the mainland,

where the waters of the Skagit river enter its waters through the several mouths of that river. It is bounded on the south for the most part by Camano Island, a comparatively small slough connecting with the waters to the south between that island and the mainland, and a wide navigable channel known as Saratoga Passage connecting with the waters to the southwest between that island and Whidbey Island. It is bounded on the west by Whidbey Island. Deception Pass, one of its principal arms, extends westerly along the northerly end of Whidbey Island, opening into the waters of the straits of Juan de Fuca. It and its Deception Pass arm are bounded on the north by Fidalgo Island, there being a comparatively small slough connection with the waters to the north between that island and the mainland to the east. Salmon coming from the ocean through the straits of Juan de Fuca seek the waters of Skagit Bay and the fresh water mouths of the Skagit river for the most part through Saratoga Passage and Deception Pass.

The plaintiffs own, and for some years past have operated, salmon fish traps in the waters of Skagit Bay and thereby have taken large quantities of salmon from those waters. A number of other persons own, and for some years past have operated, salmon fish traps in the waters immediately to the west of Whidbey and Fidalgo Islands, whereby large quantities of salmon have been and are now being taken while on their way seeking entrance through Saratoga Passage and Deception Pass into Skagit Bay and the fresh water mouths of the Skagit river. These two classes of fish trap owners and operators have thus heretofore taken salmon from the same schools of salmon but at these different locations in the course of the movement of the schools. The plaintiffs heretofore exercised this privilege in the waters of Skagit Bay by virtue of per-

mits granted by the fisheries authorities of the state. The owners and operators of salmon traps located immediately to the west of Whidbey and Fidalgo Islands have been and are now exercising this privilege by virtue of permits granted by the fisheries authorities of the state. The state fisheries board has made and promulgated an order and rule creating a fish preserve which prohibits the taking of salmon except with hook and line within the boundaries of Skagit Bay and its arms, including Deception Pass, and thus has taken from the plaintiffs the privilege of continuing the taking of salmon by the operation of their traps in the waters of Skagit Bay.

Allegations are further made in the complaint with a view of showing that the order of the state fisheries board is capricious and arbitrary to the extent that the court should hold it void as unconstitutionally according privileges and immunities to the owners of the traps located immediately west of Whidbey and Fidalgo Islands which are withheld from the plaintiffs as owners and former operators of traps in Skagit Bay; also as depriving the plaintiffs of their property, to wit, rendering valueless their fish traps in Skagit Bay, without due process of law. These particular allegations are summarized in the Department opinion, but we regard them as of no controlling force here, since, as will presently appear, they relate to possible considerations and reasons prompting the state fisheries board to make the order, with which the courts have no concern.

Let us at the outset be reminded that in the regulation of and restrictions upon the taking of the fish from the waters of the state, the state is but dealing with its own property over which its control is as absolute as any other owner has over his property.

In *State v. Tice,* 69 Wash. 403, 125 Pac. 168, 49 L. R. A. (N. S.) 469, we said:

"The decisions of the courts in this country, so far as they have come to our notice, are all in unison in holding that there is no private right in the citizen to take fish or game, except as such right is either expressly or inferentially given by the state."

This view of the law, has been steadfastly adhered to without qualification since the rendering of that decision. *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938; *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15.

By what agency may the state act and speak in the making of such regulations and restrictions as it desires to put into force with reference to the taking of fish from its waters? Of course, it may do so through direct action of its legislature directly and specifically prescribing rules and territorial limits within which fish may and may not be taken. It is elementary law that, when such regulations and restrictions are directly so prescribed by the legislature, the courts have no concern with the reasonableness and wisdom of such regulations and restrictions; and, since the legislature may delegate to some other state agency, in this case to the state fisheries board, the determination of territorial limits within which fish may or may not be taken (*Cawsey v. Brickey, supra*), we think the action of such agency, within the scope of its legislative prescribed power, is equally beyond judicial control or interference. This, it seems to us, must be true, especially in view of the fact that the state is thereby but creating and empowering an agency for the disposition of its own property. Now, the power of the state fisheries board in the premises is found in § 10868, Rem. Comp. Stat. [P. C. § 4-110], reading as follows:

"The state fisheries board shall have the power to investigate the habits, supply, and economic uses of,

and to classify, the food fishes in the waters of the state of Washington and, from time to time, make, adopt, amend, and promulgate rules and regulations governing the taking thereof, (1) fixing the times when the taking of the several classes of, and all, food fishes is prohibited, (2) *specifying and defining the places and waters in which the taking of the several classes of, and all, food fishes is prohibited,* and (3) defining, fixing, and prescribing the kinds of gear, appliances, or other means that may be used in taking the several classes of food fishes, and the times, places and manner of using the same."

We italicize the words to be particularly noticed. Here is a plain, express and specific delegation, not of non-delegable legislative power, but of delegable power, to prescribe territorial limits within which fish in the state's waters may or may not be taken. We are, therefore, confronted, as it seems to us, with an exercise of power by the state fisheries board in the making and promulgation of this order, as far beyond judicial control as if exercised directly by the state through legislative action. This brings us to a consideration of the constitutional guarantees invoked in behalf of the plaintiffs.

Are the plaintiffs denied equal privileges and immunities accorded to the owners and operators of the fish traps immediately to the west of Whidbey and Fidalgo Islands, in violation of the equal privileges and immunity guarantees of § 12, art. 1, of our state constitution? We think not. No decision has come to our notice, and we think there is none, holding any prescribing of territorial limits of a fish or game preserve to be a violation of this or any similar constitutional guarantee, where all persons are alike equally privileged and restricted with reference to such preserves. Our own decisions, and those of other jurisdictions, so far as we are advised, are in unison upon this view of the law. *Hayes v. Territory,* 2 Wash. Terr. 286, 5 Pac. 927;

*State v. Tice,* 69 Wash. 403, 125 Pac. 168; *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938; *Barker v. State Fish Commission,* 88 Wash. 73, 152 Pac. 537, Ann. Cas. 1917D 810; *State v. Hals,* 90 Wash. 540, 156 Pac. 395. The allegations of the complaint do not suggest that the plaintiffs are denied any fishing privileges or immunities accorded to other citizens outside the limits of this preserve, nor do the allegations of the complaint suggest that the plaintiffs are denied any fishing privileges or immunities not alike denied to all other citizens inside the limits of this preserve. The order of the state fisheries board establishing this preserve is manifestly not in any sense a classification of persons with respect to their constitutional privileges and immunities, but is only a classification of territory with respect to which all are restricted exactly alike.

Counsel for plaintiffs seek to escape this settled view of the law, seemingly upon the theory that they are discriminated against by not being permitted to take salmon with their traps situated in Skagit Bay from the same schools of salmon from which owners of traps situated immediately to the west of Whidbey and Fidalgo Islands may take, while such schools are on their way to the fresh water mouths of the Skagit river. It is, however, easy to see that there may be sound economic reasons entertained by the state fisheries board for the allowing of the taking of salmon immediately west of Whidbey and Fidalgo Islands and not allowing the taking of salmon in Skagit Bay nearer the fresh water mouths of the Skagit river, though such takings may both be from the same schools. This of itself is enough to induce the courts to refrain from interfering with the force and effect of the board's promulgated order establishing this preserve. To enter upon a judicial inquiry as to the reasonableness or

wisdom of this order, with a view of testing its force and validity, would be but to usurp legislative and lawfully delegated administrative powers of the state having to do with the disposition of the state's own property; and hence we hold that no judicial question is presented by the allegations of the complaint which seeks to draw in question the wisdom, reasonableness, or even the capricious exercise of this power of establishing this preserve. The state does not have to base its action in the premises upon any reason or consideration with which the courts have any concern, no more than does any owner of property with reference to his lawful disposition of his property.

Are the plaintiffs, by the establishment of this preserve, deprived of their property without due process of law, in that their traps located in the waters of Skagit Bay are rendered of little or no value, as they allege? It is apparent that the plaintiffs have no property rights in their former fishing trap locations in Skagit Bay as against the state. Their rights there were only by virtue of revocable privileges granted by the state. *State v. Hals,* 90 Wash. 540, 156 Pac. 395; *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15. From which it follows that the rendering of the plaintiffs' fish traps located in the waters of Skagit Bay of little or of no value does not deprive them of their property without due process of law, in violation of the state or Federal constitutional due process of law guarantees.

Viewed from every angle, we are quite clear that the allegations of the plaintiffs' complaint do not state facts entitling them to the relief for which they pray; that the sustaining of the demurrer to their complaint has the full sanction of the law; and they having rested thereon without pleading further, the judgment of dis-

missal rendered against them by the trial court must be affirmed. It is so ordered.

MAIN, C. J., FULLERTON, MITCHELL, MACKINTOSH, and BRIDGES, JJ., concur.

HOLCOMB, J. (dissenting)—Notwithstanding what was said in *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15, by both the majority and minority opinions, the effect of this decision is to vest in the fisheries board absolute and unlimited legislative power. No longer will they be held to be invested with merely the details of the regulation of the state's property in the fish and fish waters. The decision proves that such a law may become unrepresentative, tyrannical and arbitrary by its operation. By the complaint in this case, the sufficiency of which is all we have before us, there is undoubtedly a most tyrannical and arbitrary action on the part of the state fisheries board in this matter. The facts alleged may not be correct, but that is a question to be determined by a trial. That question, as was said in *Vail v. Seaborg, supra,* is a mere question of detail in dealing with the state's property.

For these and the reasons stated by me in the prevailing opinion in *McMillan v. Sims,* 129 Wash. 516, 225 Pac. 240, and by Judge Tolman in his dissenting opinion in *Vail v. Seaborg, supra,* I am compelled to dissent from this opinion.

TOLMAN and PEMBERTON, JJ., concur with HOLCOMB, J.