[Sac. No. 4788. In Bank.—February 28, 1934.]

ALFRED R. JOHNSON et al., Appellants, v. J. DALE GENTRY et al., Respondents.

Eugene S. Selvage for Appellants.

U. S. Webb, Attorney-General, and Eugene D. Bennett for Respondents.

THE COURT.—Plaintiffs bring this action on behalf of Eureka Fishermen's Union, an unincorporated association of commercial fishermen comprising about 150 members, against respondents as members and deputies of the California Fish and Game Commission, to restrain them from enforcing the provisions of Penal Code section 634, as amended in 1931. The lower court gave judgment for defendant.

The facts are not in dispute. The controlling provision of the statute in question reads: "No salmon from the high seas, Oregon, or any other fish and game district may be *brought* through fish and game districts six, seven, eight and nine between the sixteenth day of September and the

thirtieth day of April of the year following, both dates inclusive.'' (Pen. Code, sec. 634, subd. 6.) This provision sets up, during the closed season for salmon fishing within this state, a barrier to the transportation of salmon caught outside the jurisdiction of the state. The districts mentioned therein comprise the three mile marginal belt of ocean waters from Oregon to the Sonoma County line, and the waters of Humboldt Bay. In those districts, the law prohibits the taking of fish during the closed season. The statute under consideration provides also that salmon caught outside the three mile limit, and hence *lawfully* acquired, cannot be *transported* through the waters of these districts during the closed season. Plaintiffs take their salmon in the waters of the Pacific Ocean outside the limits of the districts, and transport them to the city of Eureka for sale. The statute does not prohibit them from taking or selling the fish; it is aimed solely at transporting them through the designated waters. Plaintiffs therefore urge its unconstitutionality on the following chief grounds: First, that it violates the commerce clause of the federal Constitution by interfering with the transportation into this state of property lawfully acquired outside the jurisdiction; second, that it violates the equal protection clause of the Fourteenth Amendment to the federal Constitution by discriminating between fishermen and carriers similarly situated.

The purpose of the statute, as appears from the legislative declaration which first proclaimed it as an urgency measure, is to protect against excessive destruction of immature salmon. In the case of *Svenson* v. *Engelke*, 211 Cal. 500 [296 Pac. 281], this court held that the statute as it then read did not prohibit the possession or transportation of fish caught on the high seas during the closed season. The amended section was enacted to change the rule of that case. The enlarged scope was made necessary by reason of the impossibility of enforcing the statute without such provision. It is pointed out that it is a simple matter to fish within the districts and claim that the catch was obtained outside their limits. A patrol force of prohibitive size and expense would be required for any supervision over such unlawful activities. Consequently the statute must, as a practical matter, prohibit all such

transportation. If it does incidentally interfere with interstate commerce, such is not its exclusive or major purpose.

With this statutory purpose in mind, the first contention of plaintiffs may be readily disposed of. In *Ex parte Maier*, 103 Cal. 476 [37 Pac. 402, 403, 42 Am. St. Rep. 129], a statute prohibiting the sale of deer meat, and applying to deer imported as well as those killed within this state, was upheld, the court saying (p. 480): "The facility and ease with which the statutes for the protection of game have been evaded in the past is a matter of common knowledge. Deer and other game have been slaughtered during the closed season and foisted on the market as game procured without the state, and owing to the practical impossibility in the great majority of cases of proving with certainty the source from which it was procured, the attempted enforcement of the statutes for its protection has largely proven abortive. These and like considerations no doubt actuated the legislature in the premises, and induced the enactment of the statute in its present stringent form. And we know of no good reason why it should not be held to mean what it says. Similar statutes in other states have received a like construction." In *Union Fishermen's etc. Co.* v. *Shoemaker*, 98 Or. 659 [193 Pac. 476, 194 Pac. 854], an Oregon statute was upheld which prohibited possession of salmon caught on the high seas. The court said (193 Pac. 481): "Of course the state of Oregon has no jurisdiction over the waters of the Pacific ocean beyond the three-mile line; nor did the state by the enactment of the statute in question attempt to make fishing beyond the three-mile limit unlawful. The statute was adopted in order to make effective the prohibition against taking fish during the closed season from waters over which the state may rightfully exercise jurisdiction, and that the state has authority to do this is settled beyond controversy." To the same effect, see *Silz* v. *Hesterberg*, 211 U. S. 31 [29 Sup. Ct. 10, 53 L. Ed. 75]; *Van Camp Sea Food Co.* v. *Department of Natural Resources*, 30 Fed. (2d) 111; and the remarks of this court in *Svenson* v. *Engelke*, *supra*.

The other contention of plaintiffs is that the statute is discriminatory in its operation. It is pointed out that they may catch fish on the high seas, take the catch to

Oregon, transport it by land into this state, and sell the fish at their place of business in Humboldt County; and that to prohibit them from accomplishing the same object by the shorter and profitable method of bringing the catch in by water, is to discriminate between types of carriage and transportation. An element of discrimination is inherent in the operation of the statute, and cannot be avoided if the object is to be carried out. There is little danger of unlawfully taken fish coming into Eureka by land, and there is such danger where the fish are brought in by water. The authorities above cited dispose of this claim.

Plaintiffs make the further assertion that the statute discriminates in favor of Monterey salmon fishermen, to whom the prohibition does not apply. No explanation of this assertion is made, and in the agreed statement of facts upon which the case was tried, there is no reference to fishermen operating off Monterey. Consequently there is nothing in the record by which we may test this claim of discrimination, and in the absence of a convincing proof thereof, the presumption in favor of constitutionality is determinative. Defendants observe, however, that the particular districts covered by the legislation are those situated at the mouths of rivers where the salmon ascend to spawn and propagate, and are in need of the protection.

We have considered plaintiffs' contentions on their merits, but in fact, the federal questions raised have already been conclusively determined against them. At the time the urgency statute was passed, the federal district court had decided a similar case against certain fishermen operating in the San Francisco Bay district, and an appeal had been taken to the United States Supreme Court. The decision was subsequently affirmed in *Noack* v. *Zellerbach*, 283 U. S. 798 [51 Sup. Ct. 490, 75 L. Ed. 1421], the memorandum opinion reading as follows: ''Decree affirmed. California Act of April 2, 1931, amending California Penal Code, sec. 634 (Stats. of California, 1931, c. 101); *Svenson* v. *Engelke*, 211 Cal. 500 [296 Pac. 281]; *New York ex rel. Silz* v. *Hesterberg*, 211 U. S. 31 [29 Sup. Ct. 10, 53 L. Ed. 75].''

The judgment is affirmed.