[No. 32952.  *En Banc.*  March 10, 1955.]

CLARENCE FRACH et al., *Appellants*, v. ROBERT J. SCHOETTLER,
*as Director of the State Department of Fisheries,*
*et al., Respondents.*[1]

[1]Reported in 280 P. (2d) 1038.

*Fred M. Bond, Smith Troy,* and *Philip W. Richardson,* for appellants.

*The Attorney General, Joseph T. Mijich* and *Thomas A. Swayze, Jr., Assistants,* for respondents.

OTT, J.—This action was brought by one hundred thirty-two fishermen against the director of the department of fisheries of the state of Washington and the state treasurer, for the purpose of testing the validity of chapter 147, Laws of 1953, p. 287 [*cf.* RCW (Sup. 1953) 75.18], in so far as this act affects the rights of the plaintiffs to catch salmon exclusively beyond the territorial waters of the state, and to make a sale and disposal of them within the state boundaries during certain seasons.

Plaintiffs sought an injunction against enforcement of this act upon the ground that it is unconstitutional and, therefore, void, and that much of the authority granted to the director constitutes an unlawful delegation of legislative power. By an alternative cause of action, plaintiffs sought a declaratory judgment decreeing and adjudicating the statute void.

A demurrer to the second amended complaint of the plaintiffs was sustained by the trial court. Plaintiffs declining to plead further, the action was dismissed with prejudice. The appeal to this court was taken from the judgment of dismissal.

Plaintiffs (hereinafter referred to as appellants) are residents of this state, and the owners of commercial fishing vessels, fishing exclusively three miles beyond the shores of the state of Washington, which is outside the territorial limits of the state. Although the appellants fish commercially for other fish, in this action they are concerned only with the regulatory provisions of the act in question as it applies to their salmon fishing activities. After the salmon are caught and cleaned, they are brought into the state and sold to canneries. By § 1 of the act, the legislature determined that it is impossible to distinguish the salmon that are caught outside the state boundaries from those caught within the territorial waters of Washington.

The questioned sections of the act provide generally as follows:

Section 1 declares the state legislative policy concerning the salmon industry.

Section 2 creates two fishery districts, district No. 1, which includes the straits of Juan de Fuca and the waters of the Pacific ocean over which the state has jurisdiction, exclusive of bays, inlets, canals, coves, sounds, and estuaries, and district No. 2, which includes all waters over which the state has jurisdiction, excepting therefrom district No. 1.

Sections 3 and 4 forbid commercial fishing for silver salmon in the waters of district No. 1 between November 1st and June 15th, and for chinook salmon between November 1st and March 14th.

Section 5 forbids possession or transportation through the waters of district No. 1 of silver salmon taken from those waters or from the Pacific ocean during the period from November 1st to June 15th.

Section 6 makes the same provision relative to chinook salmon for the period from November 1st to March 14th.

Sections 7 and 8 make it unlawful for any processor, canner, and so forth, to have in his possession silver or chinook salmon taken from the waters of district No. 1 or the Pacific ocean during the closed seasons specified. Section 8 also authorizes the director, upon due notice and hearing, to vary the opening and closing dates of the fishing seasons.

Section 9 provides that anyone operating a commercial fishing vessel used for catching chinook or silver salmon in offshore waters, and transporting them in and through the waters of the state for delivery to any place or port in the state, shall obtain a permit from the director of fisheries. The fee for this permit is ten dollars for the vessel and ten dollars for each member of its crew. The section further empowers the director to revoke permits for violation of regulations.

On or about May 31, 1953, the director adopted certain amendments to General Order No. 256 of the Orders of the Director of Fisheries. These amendments extended the open season in certain areas within the state for those using various types of fishing gear.

█ It is a well established rule that one who attacks the constitutionality of a law, clearly has the burden of proof. *Shea v. Olson*, 185 Wash. 143, 151, 53 P. (2d) 615, 111 A. L. R. 998 (1936), and cases cited; *Sears v. Western Thrift Stores of Olympia*, 10 Wn. (2d) 372, 116 P. (2d) 756 (1941); *Martin v. Tollefson*, 24 Wn. (2d) 211, 163 P. (2d) 594 (1945); *Gruen v. State Tax Comm.*, 35 Wn. (2d) 1, 211 P. (2d) 651 (1949); *Miller v. Howe Sound Min. Co.*, 77 F. Supp. 540; 11 Am. Jur. 776, Constitutional Law, § 128.

█ Every law is presumed to be in the interest of the public welfare. *Tacoma v. Fox*, 158 Wash. 325, 290 Pac. 1010 (1930). See, also, *New York ex rel. Silz v. Hesterberg*, 211 U. S. 31, 53 L. Ed. 75, 29 S. Ct. 10 (1908). In the instant case, § 1 of the act declares the public policy of this state. This court cannot dispute this legislative finding, or declaration of policy. *State ex rel. Govan v. Clausen*, 108 Wash. 133, 183 Pac. 115 (1919); *State v. Miller*, 149 Wash. 545, 271 Pac. 826 (1928); *State ex rel. Gray v. Martin*, 29 Wn. (2d) 799, 804, 189 P. (2d) 637 (1948), and cases cited; *State ex rel. Pennock v. Coe*, 42 Wn. (2d) 569, 573, 257 P. (2d) 190 (1953), and cases cited.

With these fundamental principles in mind, we must next determine whether the exercise of the power delegated to the director by the act is within the police power reserved to a sovereign state.

"It is well established that, by reason of the state's control over fish within its limits, it is within the police power of the state, subject to constitutional restrictions, to impose by legislative enactment such restrictions and limitations on the catching of fish as may be reasonably necessary for the protection and regulation of the public's rights therein, even to the extent of restricting the use of, or right of property in, the fish after they are taken, and of obliging all citizens to conform to such regulations by inflicting penalties for the violation of them." 36 C. J. S. 857, Fish, § 26.

This court, in defining police power, stated:

"However difficult it may be to give a precise or satisfactory definition of 'police power,' there is no doubt that the state, in the exercise of such power, may prescribe laws tending to promote the health, peace, morals, education, good

order and welfare of the people. . . . the only limitation upon it [police power] is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution." *Shea v. Olson, supra,* p. 153.

See, also, *State v. Walter Bowen & Co.,* 86 Wash. 23, 149 Pac. 330 (1915); *Parrott & Co. v. Benson,* 114 Wash. 117, 194 Pac. 986 (1921); *State v. Sears,* 4 Wn. (2d) 200, 205, 103 P. (2d) 337 (1940), and cases cited; *Lane v. Department of Labor & Industries,* 21 Wn. (2d) 420, 427, 151 P. (2d) 440 (1944), and cases cited; *State v. Dexter,* 32 Wn. (2d) 551, 554, 202 P. (2d) 906, 13 A. L. R. (2d) 1081 (1949), and cases cited.

We conclude that regulation and conservation of our salmon industry, as defined in the questioned act, promote the "good order and welfare of the people," and hence are clearly within the police power of the state.

We turn now to the consideration of appellants' assignments of error.

Appellants contend that the trial court erred in allowing the director to enforce § 9 of the act. This section requires the fishermen to obtain a permit for themselves and for the boat they operate, and to pay a fee therefor. It is contended that this part of the act constitutes class legislation and attempts to delegate power to the director of fisheries in violation of Art. I, §§ 8 and 10, of the United States constitution, and Art. I, §§ 3, 7, and 12, of the constitution of the state of Washington.

We cannot agree that this act constitutes class legislation or is discriminatory. All commercial fishermen, catching and transporting salmon in Washington waters, are required to obtain a permit and pay the same fee. See § 9 of the questioned act (RCW 75.18.080), and RCW 75.28.080, 75.28.100. There is no distinction as to types of equipment used or where the user thereof may be fishing. All who come within the provisions of the statutes are equally affected thereby.

In *State v. Hennessy,* 114 Wash. 351, 361, 195 Pac. 211 (1921), we said:

"The legislature has power to pass all needful police regulations and so long as such regulations bear with equal weight upon all in like situation or of the same class, they are upheld by the courts."

Does the act unlawfully delegate legislative power to the director? The general question has been considered by this court in the following cases: *Vail v. Seaborg*, 120 Wash. 126, 207 Pac. 15 (1922); *McMillan v. Sims*, 132 Wash. 265, 231 Pac. 943 (1925); *State v. Nelson*, 146 Wash. 17, 261 Pac. 796 (1927); *State v. Miles*, 5 Wn. (2d) 322, 105 P. (2d) 51 (1940); *Senior Citizens League v. Department of Social Security*, 38 Wn. (2d) 142, 153, 228 P. (2d) 478 (1951), and cases cited.

These cases recognize the distinction between the power to legislate and the power to administer. The delegated authority is simply ministerial. In *Vail v. Seaborg, supra*, which declared lawful a similar delegation of power to the director of fisheries, we said (p. 130):

"The recognized distinction in matters of this kind, however, is between power to legislate and the power to administer.

"The great increase in the duties of the governing bodies has brought about a demand that matters in which the general public are interested shall be governed in their details to an extent impracticable to be attended to by the legislative bodies which meet only biennially, and statutes of this character are passed to meet the situation. . . . It is a well known fact that the salmon industry of the state is rapidly disappearing and the legislature declares its purpose to protect and perpetuate it."

In *McMillan v. Sims, supra,* we said (p. 270):

"Here is a plain, express and specific delegation, not of non-delegable legislative power, but of delegable power, to prescribe territorial limits within which fish in the state's ·waters may or may not be taken."

There is no question that the legislature may delegate the power to make rules and regulations relating to the taking of fish and game, within a stated policy of protection and conservation of our natural resources. *Senior Citizens League v. Department of Social Security, supra*, p. 153.

We find no merit in appellants' contention that legislative powers have been unlawfully delegated to the director.

Appellants contend that § 9 violates Art. I, § 8, of the United States constitution, which provides, in part:

"The congress shall have power . . .

"To regulate commerce with foreign nations, and among the several states, . . ."

With this we do not agree. It should be stated at the outset that, according to § 9 of the act, only vessels and crews which bring their catch through the waters within the jurisdiction of this state, or deliver the catch to ports within this state, are required to have a permit. It is not necessary for other vessels fishing in the ocean off our coast to obtain a permit. If boats fishing outside the three-mile limit were not included in the permit requirement when they enter Washington waters, it would defeat the purpose of the act. The operator of any boat within the three-mile limit, heading for port, could claim that the fish were caught more than three miles from shore and, therefore, he would not be within the jurisdiction of the act.

In *Mirkovich v. Milnor*, 34 F. Supp. 409 (1940), a case dealing with a similar regulation, it was stated (p. 412):

"If this latter power [to regulate fishermen outside California territorial waters] were denied to the state, it would clearly result in the practical deprivation to the state of its undoubted right to regulate the taking of fish from within its territorial waters."

See, also, *State v. Belknap*, 104 Wash. 221, 176 Pac. 5 (1918); *Johnson v. Gentry*, 220 Cal. 231, 30 P. (2d) 400, 92 A. L. R. 1264 (1934); *New York ex rel. Silz v. Hesterberg, supra.*

Appellants next argue that, even though the permit is found to be a valid exercise of the police power, the ten-dollar fee is invalid because it bears no relation to the general welfare of the state. The regulation of our salmon industry for conservation purposes certainly bears directly on our state's general welfare. As is pointed out in *State v. Miller, supra* (p. 549):

"The legislature, in the protection of its own property,

may impose a regulation upon other property which never belonged to it, if in its opinion such a regulation is needed."

That such regulations in this state are needed, is clearly pointed out by the legislative declaration in § 1 of the act.

In *Wiggins Ferry Co. v. East St. Louis*, 107 U. S. 365, 27 L. Ed. 419, 2 S. Ct. 257 (1882), the court stated:

"The levying of a tax upon vessels . . . or the exaction of a license fee by the State within which the property subject to the exaction has its *situs*, is not a regulation of commerce within the meaning of the Constitution of the United States."

We find no merit in appellants' contention.

■ Appellants' next contention is that § 9 of the act violates Art. I, § 10, of the United States constitution, which provides:

" . . . No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: . . ."

The act does not levy a tax upon the catch, or upon the size or weight of the fish, or upon any item of import. The permit fee is a charge assessed upon the men engaged in the work and upon the boat, and is for the purpose of regulation and conservation of our salmon industry.

Counsel for appellants rely upon *Booth Fisheries Corp. v. Case*, 182 Wash. 392, 47 P. (2d) 834 (1935). The statute in the *Booth* case levied a tax on the fish and was designed as a "catch tax." In this respect, the *Booth* case is readily distinguishable from the case at bar. The permit fee is nominal. The act is not a revenue measure. Regulatory fees paid are not subject to the constitutional restrictions on the power to tax. *McQueen v. Kittitas County*, 115 Wash. 672, 198 Pac. 394 (1921).

Since the permit fee imposed by the act is in no sense a tax upon imports, we find no merit in appellants' contention that the act is in violation of Art. I, § 10, of the United States constitution.

■ Appellants next contend that the trial court erred

in upholding the director's action in enforcing those sections (5, 6, 7, 8) of chapter 147, Laws of 1953, which prohibit appellants from possessing and selling fish within this state during certain seasons.

We hold that the possession and sale of the salmon by appellants are subject to state regulation and supervision, and what has heretofore been said concerning permits and fees applies equally to possession and sale. Even though the taking is beyond our jurisdiction, the possession and sale are within our jurisdiction, and appellants are subject to state regulation.

In *Bayside Fish Flour Co. v. Gentry*, 297 U. S. 422, 80 L. Ed. 772, 56 S. Ct. 513, the court said (p. 426):

"Sardines taken from waters within the jurisdiction of the state, and those taken from without are, of course, indistinguishable; and to the extent that the act deals with the use or treatment of fish brought into the state from the outside, its legal justification rests upon the ground that it operates as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy."

Appellants' next contention is that the trial court erred in upholding the director's action in enforcing General Order No. 256, as amended. The regulation does not deny appellants the right to enter into the areas where the fishing seasons are open, and to fish in those areas with certain prescribed equipment, and to dispose of the fish so obtained. Their rights and privileges in this regard are equal to those of all who are engaged in the like business of fishing. What has been said before with reference to class legislation, and the power of the director to make the regulation, applies to the action of the director in this regard. See *McMillan v. Sims, supra*.

With reference to appellants' contention that there has been a violation of Art. I, § 7, of the state constitution, we hold that the fishing industry is not a private affair of the appellants. It is an affair of great public interest and concern. *Wiegardt v. Brennan*, 192 Wash. 529, 73 P. (2d) 1330 (1937); *State v. Dexter, supra*, p. 557.

██ Appellants' rights with reference to the "due process clause" and the "privilege and immunity clauses," as set out in Art. I, §§ 3 and 12, of the state constitution, and in § 1 of the fourteenth amendment to the United States constitution, are not abridged by the act in question. It is the established rule in Washington that none of these constitutional provisions applies to laws enacted by the state legislature in the exercise of its police power. *Seattle v. Gervasi,* 144 Wash. 429, 258 Pac. 328 (1927); *Shea v. Olson, supra*; *Lane v. Department of Labor & Industries, supra*; *Senior Citizens League v. Department of Social Security, supra.*

██ Finally, it is contended that, upon a petition for a declaratory judgment, a demurrer should not be sustained, but that the matter should be heard upon its merits.

A reading of the entire declaratory judgment act convinces us that a proceeding commenced under the provisions of the act is subject to the same rules of pleading as any other civil action.

We are of the opinion that none of the assignments of error merits sustaining the contentions of the appellants.

We hold that chapter 147, Laws of 1953, is a valid act and does not violate or abridge any of the state or Federal constitutional rights or guarantees of the appellants.

The judgment of the trial court is affirmed.

ALL CONCUR.

---

April 20, 1955. Petition for rehearing denied.