[No. 2198–3.   Division Three.   December 29, 1977.]

THE DEPARTMENT OF FISHERIES, *Appellant,* v. CHELAN COUNTY PUBLIC UTILITY DISTRICT No. 1, *Respondent.*

*Slade Gorton, Attorney General,* and *Dennis D. Reynolds, Assistant,* for appellant.

*Davis, Arneil, Dorsey, Kight & Parlette* and *Robert L. Parlette,* for respondent.

MUNSON, C.J.—The Washington State Department of Fisheries (hereafter referred to as the Department) appeals from the granting of a summary judgment on motion of the Chelan County Public Utility District No. 1 (hereinafter referred to as PUD). This matter arose when the Department determined the fish ladders of the Tumwater and the Dryden Dams, owned by the PUD, were inadequate and in need of modification. When the PUD refused to assume the cost of modification, the Department commenced this action for declaratory judgment, seeking to hold the PUD

liable for that cost. Both parties moved for summary judgment, the Department's motion was denied, and the PUD's motion was granted.

The sole issue presented on this appeal is whether RCW 75.20.060[1] provides authority for the Director of the Department to order the PUD to undertake the modification of the fish ladders at its dams at an approximate cost of $500,000. We hold the Director has such authority.

For the purpose of this appeal, the following are the facts upon which this decision rests:

Both the Tumwater and Dryden Dams were built with fish ladders in the early 1900's. In 1939, as part of the Grand Coulee Fish Maintenance Project initiated because construction of the Grand Coulee Dam caused blockage of the Columbia River, the Department redesigned and rebuilt the fish ladders utilizing federal funds. The PUD acquired

---

[1] "Every dam or other obstruction across or in any stream shall be provided with a durable and efficient fishway, which shall be maintained in a practical and effective condition in such place, form and capacity as the director may approve, for which plans and specification shall be furnished by the director upon application to him, and which shall be kept open, unobstructed and supplied with a sufficient quantity of water to freely admit the passage of fish through the same. Every owner, manager, agent or person in charge of such dam or obstruction who shall fail to comply with the provisions of this section is guilty of a gross misdemeanor.

"If any person or government agency fails to construct and maintain such fish ladder or fishway or to remove such dam or obstruction in a manner satisfactory to the director, then within thirty days after written notice thereof has been served upon the owner, his agent, or the person in charge thereof, the director may construct a suitable fish ladder or fishway, or remove such dam or obstruction, and the actual cost in case of construction of fishway thereof shall constitute a lien upon the dam and upon all the personal property of the person or government agency owning the same. Notice of such lien shall be filed and recorded in the office of the county auditor of the county in which such dam or obstruction is situated. Such lien may be foreclosed in any action brought in the name of the state.

"If any person or government agency fails to make any such fishway or remove such dam or obstruction in a manner satisfactory to the director, then within thirty days after written notice thereof has been served on the owner, his agent, or the person in charge, such dam or obstruction shall thereby become a public nuisance and the director may take possession thereof in his own name or in the name of the state and destroy it and no liability shall attach for such destruction."

ownership of these dams from Puget Sound Power and Light Company in 1947 and 1948, but ceased using them for power generation in 1957. The Department, in conjunction with the United States Bureau of Fisheries, continued to maintain the fish ladders until 1975, when the Department called to the PUD's attention RCW 75.20.061.[2] The PUD acknowledges this statute requires it to maintain the fishways. It meets this duty by contracting with the Department to "perform inspection and minor maintenance" thereon, but their agreement reserves any major maintenance work to a further agreement of the parties "as to the method and means for handling the work."[3]

■■ As a point of departure, we note that historically this state has under its police power the right to promulgate regulations conserving and protecting the fish resource and fish runs within its boundaries. *Vail v. Seaborg,* 120 Wash. 126, 131, 207 P. 15 (1922); *State v. Tice,* 69 Wash. 403, 125 P. 168, 41 L.R.A.(n.s.) 469 (1912).

The PUD contends and the trial court held, however, that RCW 75.20.060 does not apply to dams existing at the time of the passage of that statute in 1949. This position is not well taken. Laws of 1893, ch. 110, § 1, p. 270, amending Laws of 1890, § 8, p. 107, states:

Any person or persons now owning or maintaining, or who shall hereafter construct or maintain, any dam or other obstruction across any stream in the state in which any food fish are wont to ascend without providing a fish

---

[2] "In the event any fish passage facility or fish protective device as set forth in RCW 75.20.040 and 75.20.060 which have been in existence or are existing at the time of enactment of this act, is determined by the director to be inadequate for the purposes for which it was intended; the director in addition to other authority granted in this chapter may in his discretion, remove, relocate, reconstruct, or modify said device, without cost for materials and labor to the owner or owners thereof: *Provided,* That the director may not materially modify the amount of flow of water through the facility or device. Thereafter such fish passage facility or fish protective device shall be maintained at the expense of the person or governmental agency owning said obstruction or water diversion in accordance with RCW 75.20.040 and 75.20.060."

[3] Exhibit 1, respondent's brief.

way or ladder determined and approved by the fish commissioner of this state and suitable to enable the fish to pass over, through or by said obstruction, upon construction thereof shall be guilty of a misdemeanor . . . and said dam may, in the discretion of the court, be abated as a nuisance.

The tenor of this legislation continues in the Laws of 1949, ch. 112, § 47, p. 272–73, and Laws of 1955, ch. 12, § 75.20-.060, p. 42 (RCW 75.20.060, which is the statute in its present form). Therefore, the PUD's contention that its dams were constructed prior to the adoption of the statute is incorrect. The tenor of the present statute predates the construction of the dams.[4] Furthermore, the United States Supreme Court has stated:

Rivers, though not navigable . . . may be and often are regarded as public rights, subject to legislative control, . . . as the source for furnishing a valuable supply of fish, suitable for food and sustenance. Such . . . fisheries of the kind, . . . are also so far public rights that the legislature of the State may ordain and establish regulations to prevent obstructions to the passage of the fish, . . .

*Holyoke Co. v. Lyman*, 82 U.S. (15 Wall.) 500, 506, 21 L. Ed. 133, 135 (1872). One who builds a dam on a river (or his successor–in–interest) is under an implied obligation to provide sufficient fishways to allow for the passage of fish, and unless that implied condition is specifically excluded in the grant to build that dam, the implied condition attaches. *Holyoke Co. v. Lyman, supra.*

This record fails to indicate any contract entered into either by the PUD or its predecessors–in–interest which contains a provision excluding the implied condition requiring the maintenance of sufficient fishways in conjunction with the Tumwater and Dryden Dams. Therefore, we conclude that the statutory predecessor of these statutes was in existence at the time the above dams were built and

---

[4]Federal supremacy is not an issue here as it was in *Tacoma v. Taxpayers of Tacoma*, 49 Wn.2d 781, 307 P.2d 567 (1957), *rev'd*, 357 U.S. 320, 2 L. Ed. 2d 1345, 78 S. Ct. 1209 (1958); and *Tacoma v. Taxpayers of Tacoma*, 43 Wn.2d 468, 262 P.2d 214 (1953).

the PUD is subject thereto. The Director has the authority to order the PUD to bear the reasonable expenses, including modifications, necessary to provide an efficient fishway. RCW 75.20.060.

■ Notwithstanding the conclusion of this limited issue, we shall answer the PUD's other contentions. The PUD contends that RCW 75.20.061 was enacted to require the Director to provide the upgrading of existing, but inadequate, fishways by utilization of funds from sources other than owners of existing obstructions, and that RCW 75.20-.060 deals only with the *maintenance* of existing fishways. We disagree. In addition to RCW 75.20.060, RCW 75.20.061 gives the Director authority to utilize additional funding sources for the improvement and modification of existing structures for the purpose of providing more efficient fishways. The phrase "in addition to other authority granted", included in RCW 75.20.061, is not solely restricted to providing fish hatcheries (RCW 75.20.090) or the removal of obstructions (RCW 75.20.060), as contended by the PUD during oral argument.

The PUD also contends that if RCW 75.20.060 is applicable, it is a denial of equal protection of the law. Again, we disagree. The history of that statute evidences it was in existence when the PUD's predecessor–in–title constructed the dams, so that its application to these structures is not retroactive. Furthermore, the PUD's obligation to the general public is paramount; the application of RCW 75.20.060 and .061 is not a gift of state funds. Both parties are municipal corporations whose very existence is for the benefit of the public.

We do not reach the several issues raised by the Department relative to whether the Director properly exercised his discretion in determining that the present fishways were inadequate. Nor do we determine whether the proposed modifications are reasonable and adequate to serve the purposes contemplated by the Director; the trial court did not reach these issues. They are factual matters yet to be determined by the trial court.

Judgment is reversed and the matter remanded for trial.

GREEN and McINTURFF, JJ., concur.

Reconsideration denied February 23, 1978.

Review granted by Supreme Court July 21, 1978.