[No. 45460.  En Banc.  January 4, 1979.]

THE DEPARTMENT OF FISHERIES, *Respondent*, v. CHELAN
COUNTY PUBLIC UTILITY DISTRICT NO. 1,
*Petitioner*.

*Davis, Arneil, Dorsey, Kight & Parlette,* by *Robert L. Parlette,* for petitioner.

*Slade Gorton, Attorney General,* and *Dennis D. Reynolds, Assistant,* for respondent.

*William S. Weaver* and *Donald G. Kari* on behalf of Puget Sound Power and Light, amici curiae.

Hicks, J.—Public Utility District No. 1 of Chelan County (PUD) petitioned for discretionary review of a decision of the Court of Appeals, Division Three, which reversed a summary judgment entered in PUD's favor in Chelan County Superior Court. *Department of Fisheries v. Chelan County PUD 1,* 18 Wn. App. 874, 573 P.2d 378 (1977). We granted review and we reverse the Court of Appeals.

The essence of the present controversy is who is to pay for the modification and reconstruction of fish passage facilities on two dams owned by PUD. In our view, the two statutes herein set forth in pertinent part, are controlling:

> Every dam or other obstruction across or in any stream shall be *provided with a durable and efficient fishway, which shall be maintained in a practical and effective condition* in such place, form and capacity as the director may approve . . . and which shall be kept open, unobstructed and supplied with a sufficient quantity of water to freely admit the passage of fish through the same. . . .
> *If any person or government agency fails to construct and maintain such fish ladder or fishway* or to remove such dam or obstruction in a manner satisfactory to the director, then within thirty days after written notice . . . *the director may construct a suitable fish ladder or fishway, or remove such dam* or obstruction, and the *actual*

*cost* in case of construction of fishway thereof *shall constitute a lien upon the dam* and upon all the personal property of the person or government agency owning the same. [In the event of failure to make the fishway or remove the dam or obstruction within 30 days after service of notice on the owner, the dam or obstruction thereby becomes a public nuisance.]

(Italics ours.) RCW 75.20.060.

In the event any fish passage facility or fish protective device as set forth in RCW 75.20.040 and 75.20.060 which have been in existence or are existing at the time of enactment of this act, is determined by the director to be *inadequate* for the purposes for which it was intended[,] the director in addition to other authority granted in this chapter may in his discretion, *remove, relocate, reconstruct, or modify said device,* without cost for materials and labor to the owner or owners thereof: *Provided,* That the director may not materially modify the amount of flow of water through the facility or device. Thereafter such fish passage facility or fish protective device shall be *maintained* at the expense of the person or governmental agency owning said obstruction or water diversion in accordance with RCW 75.20.040 and 75.20.060.

(Some italics ours.) RCW 75.20.061.

The Court of Appeals set forth the facts of this case with some particularity in *Department of Fisheries v. Chelan County PUD 1, supra.* Briefly, construction of the Tumwater and Dryden Dams, which are located on the Wenatchee River, occurred early in this century. Both dams were provided with fish passage facilities considered to be adequate at the time of construction. PUD acquired ownership of the dams in approximately 1948. Parenthetically, in 1957 PUD ceased using either dam for the generation of electrical power.

In 1940, the fish passage facilities of both Tumwater and Dryden Dams were redesigned and rebuilt by the Department of Fisheries (Fisheries), using federal funds. As a result of the unanticipated success of the Grand Coulee Fish Rehabilitation Program of 1939, fish runs on the Wenatchee River increased markedly over the years.

Recently, the director of Fisheries determined that the fish passage devices at PUD's dams were no longer efficient or adequate. On February 6, 1976, pursuant to RCW 75.20-.060, Fisheries filed a complaint against PUD for abatement of a public nuisance. Fisheries alleged that the fishguard screens at Dryden Dam and the fishways at both Dryden and Tumwater dams were inadequate and in need of modification, as required under RCW 75.20.040–.060. Fisheries requested, *inter alia,* a declaratory judgment that efficient fishways and adequate screens be installed at PUD's expense.

Both parties moved for summary judgment limited to the issue of responsibility for payment. The cost of modification, estimated at $500,000, was not at issue. The trial court ruled that RCW 75.20.060 was inapplicable to the facts of the case, denied Fisheries' motion for summary judgment, and granted PUD's cross motion. The trial court further ordered, by way of declaratory judgment, that if the director of Fisheries found the existing fish passage facilities on the subject dams to be inadequate, the director's power to order reconstruction was limited to discretionary authority to upgrade such facilities at state expense under RCW 75.20.061.

The Court of Appeals reversed the trial court, agreeing with Fisheries that the director has authority under RCW 75.20.060 to require PUD to bear the reasonable expense of reconstructing fishways at each of its dams. The issue presented to this court is whether RCW 75.20.060 grants Fisheries the authority to order a dam owner to pay for modification of fish passage facilities formerly adequate but now deemed inadequate by the director of Fisheries.

PUD additionally argues that if Fisheries has the authority for which it contends under RCW 75.20.060, the agency is estopped from exercising that authority under the facts of this case. PUD also raises a number of constitutional issues on appeal, including alleged violations of due process and equal protection guaranties. Because we believe

that RCW 75.20.060 does not provide Fisheries the requisite authority to impose costs upon PUD, we need not reach the issues of estoppel or constitutionality.

■ The Court of Appeals not only found statutory authority for imposing costs upon the dam owner, but found the statute to be buttressed by a common–law implied obligation of dam owners, citing *Holyoke Co. v. Lyman*, 82 U.S. (15 Wall.) 500, 21 L. Ed. 133 (1872). *See also* 36A C.J.S. *Fish* § 31 (1961); 35 Am. Jur. 2d *Fish and Game* § 44 (1967). As acknowledged by Fisheries, however, the primary issue is one of statutory construction of RCW 75.20.060 and 75.20.061. The function of this court is to ascertain what the legislature has done, not to conjecture as to what the legislature could have done or what it might do in the future. To determine legislative intent, the statutory scheme as a whole should be examined. *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975).

■ Under the common law of England, all property in animals ferae naturae was in the sovereign for the use and benefit of the people. This law was carried to the colonies and ultimately to this state. We have cases which rest the state's authority to regulate fish and game upon the state's proprietary right therein, as well as upon the police power. *See, e.g., Cawsey v. Brickey*, 82 Wash. 653, 144 P. 938 (1914); *Vail v. Seaborg*, 120 Wash. 126, 207 P. 15 (1922). In any event, protection of the fish resource is clearly a valid exercise of the state's police power. *Rains v. Department of Fisheries*, 89 Wn.2d 740, 575 P.2d 1057 (1978).

RCW 75.20 indicates a broad scheme of protection for food fish, and RCW 77.16.210–.221 demonstrate equal concern for game fish. RCW 75.20.060 was enacted in its present form in 1949. It imposes a statutory duty upon dam owners to provide and maintain fishways. In addition, it provides the state with certain remedies upon a dam owner's failure to "construct and maintain" such facilities, including the power to order construction and impose a lien upon the dam for the costs thereof. It should be noted that

in 1975 PUD and Fisheries entered a maintenance agreement whereby PUD reimburses the department for maintenance expenses of its fishways. The present case involves no dispute as to maintenance responsibilities, the sole issue being who pays the cost of reconstructing existing fishways.

RCW 75.20.061 was enacted in 1963. It provides additional discretionary authority to the state to "remove, relocate, reconstruct, or modify" devices deemed inadequate, at the state's expense. In enacting RCW 75.20.061, the legislature is presumed to have considered 75.20.060, a previous enactment. *State v. Roth*, 78 Wn.2d 711, 479 P.2d 55 (1971).

The scope of the duty imposed by RCW 75.20.060 is in large part dependent upon the meaning assigned to words which are not statutorily defined, thus are to be accorded their "ordinary, everyday meaning." *New York Life Ins. Co. v. Jones*, 86 Wn.2d. 44, 47, 541 P.2d 989 (1975). *Webster's Third New International Dictionary* (1961) defines "maintain" as follows: "1. to keep in a state of repair, efficiency, or validity: to preserve from failure or decline." PUD concedes that under RCW 75.20.060 it has the duty to "maintain" existing structures at its own expense, but contends that this duty does not include reconstruction of existing facilities.

Read in conjunction with RCW 75.20.061, the language of RCW 75.20.060 fails to support Fisheries' proposed interpretation. RCW 75.20.061 specifically refers to reconstruction and modification of existing fish facilities; RCW 75.20.060 refers only to construction and maintenance. Unlike RCW 75.20.060, RCW 75.20.061 expressly designates "inadequacy" of fish passage facilities as the triggering mechanism by which the state has discretionary authority to upgrade facilities at its own expense. Both statutes refer to the dam owner's duty to "maintain" fishways; however, the proviso of RCW 75.20.061, as set forth above, explicitly refers to this duty independently of the state's authority to reconstruct or modify such facilities. Applying the *Roth* presumption, noted *supra,* it would

appear that the state's authority to impose the costs of reconstruction upon the dam owner cannot be found under the duty to maintain imposed by RCW 75.20.060.

By extending the concept of efficiency mentioned in RCW 75.20.060, an expansive definition of the duty to "maintain" might arguably encompass the modification and reconstruction of existing facilities. We are reluctant, however, to infer the existence of such unrestricted agency discretion absent a clearer expression of legislative intent. We believe that under RCW 75.20.060, the duty to maintain fishways, with the consequent responsibility to pay, means preservation in the original state of efficiency insofar as possible—not improvement to a higher state of efficiency. We have previously stated that it is not the function of this court to supply by way of construction that which the legislature has omitted. *See, e.g., Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 587 P.2d 535 (1978); *Maryland Cas. Co. v. Tacoma*, 199 Wash. 384, 392, 92 P.2d 203 (1939). If the legislature wishes to place the cost of upgrading fish facilities upon dam owners, it can so state in plain language. It has not done so in RCW 75.20.060.

The Court of Appeals is reversed and the trial court's order reinstated.

WRIGHT, C.J., and HAMILTON, STAFFORD, BRACHTENBACH, and HOROWITZ, JJ., concur.

DOLLIVER, J. (dissenting)—After observing that "RCW 75.20 indicates a broad scheme of protection for food fish" and noting the duty placed upon dam owners to "provide and maintain fishways," the majority proceeds to eviscerate RCW 75.20.060 and completely alter the carefully conceived and constructed legislative program of fish propagation and fisheries improvement.

The majority, using a sort of "fly in amber" analysis, holds that RCW 75.20.060 refers to the initial construction only of fishways and that any and all advancements in the

state of the art relative to fishways may be ignored by the dam owner.

The vice of the argument of the majority is that it makes the unfounded assumption that the phrase "[e]very dam . . . *shall be provided* with a durable and efficient fishway . . ." (italics mine) refers only to initial construction of such fishway. But there is no such qualifying term in the statute and consistent with the concern of the majority as to our invasion of legislative intent, it does not behoove us to supply such a qualifier. The statute clearly, plainly and unequivocally states a "durable and efficient" fishway "shall be provided" and "shall be maintained in a practical and effective condition in such place, form, and capacity as the director may approve." This does not mean only at the time of construction of the dam or at the construction of the fishway or at any other time which might strike the fancy or financial exigency of a dam owner. It means at all times.

Further, the use of the word "capacity" itself contemplates that as fish runs change through improved circumstances, the fishway must be changed, modified or even replaced to meet the increased fish runs.

The majority argues that since RCW 75.20.061 expressly refers to reconstruction or modification of an existing fish passage facility or fish protective device, somehow the duty imposed under .060 is limited to the original construction of fish ladders.

This contention is answerable in three ways:

1. As indicated above, RCW 75.20.060 refers to fishways which shall be provided at all times and with form and capacity to function effectively.

2. RCW 75.20.061 was shown, by an uncontroverted affidavit which the majority neglects to mention, to be a departmental request bill passed in the 1963 legislative session. This affidavit, by J. E. Lasater, assistant director of the Department of Fisheries, states that in 1963 federal funds became available to screen irrigation ditches in Eastern Washington. RCW 75.20.061 allowed the director of

fisheries to act in his discretion while federal funds were available to screen the ditches directly, where circumstances existed which made it difficult to protect the fishery resource adequately or rapidly. As stated in the affidavit—given by one with personal knowledge of the conditions and circumstances leading to the departmental request for RCW 75.20.061—"[s]ince the federal funds were available the option given under RCW 75.20.061 was requested not to necessarily save the owner from his responsibilities under the law but rather to provide immediate needed protection for the resource."

3. All of the authority granted by RCW 75.20.061 is granted to the director "in addition to other authority granted in this chapter"—*i.e.*, in RCW 75.20.060.

I would affirm the Court of Appeals.

ROSELLINI and UTTER, JJ., concur with DOLLIVER, J.