Honorable Dean Sutherland State Senator P.O. Box 40417 Olympia, WA 98504-0417
Dear Senator Sutherland:
By letter previously acknowledged, you have asked for our opinion on several questions concerning certain statutes relating to fish guards. Fish guards prevent the passage of fish into devices that divert water from a lake, river, or stream. We have paraphrased your inquiries as follows:
 1. Must the director of the Department of Fish Wildlife take civil enforcement action in every instance where the director is aware that a device diverting water from a lake, river, or stream is not equipped with a fish guard as required by RCW 75.20.040?
 2. Does RCW 75.20.040 authorize the director to close a diversion device if the owner of the diversion device fails to equip it with an approved fish guard within 30 days after the director gives the owner notice to do so?
 3. Does the director have authority to compel the owner of a diversion device to equip it with a fish guard where such a guard is required under RCW 75.20.040?
 4. Are diversion devices that were put in place prior to the effective date of RCW 75.20.040 in 1949, subject to its requirements?
 5. May the director periodically change requirements for fish guards to ensure that the guards are efficient and durable?
 6. Are hydroelectric projects licensed by the Federal Energy Regulatory Commission subject to the fish guard requirements of RCW 75.20.040?
 7. Are statutes relating to fish guard requirements for game fish less rigorous than or materially different from statutes relating to fish guard requirements for food fish?
 SHORT ANSWER
By way of brief summary, we reach the following conclusions in response to your inquiries. The director may take authorized civil enforcement action where the director is aware that a diversion device is not equipped with a fish guard, but the director is not required to take such action in every case. The director is authorized to close a diversion device if its owner fails to equip it with an approved diversion device within 30 days after the director gives the owner notice to do so. The director does not have the authority administratively to compel the owner of a diversion device to equip it with a fish guard, but has authority to take related actions. Diversion devices in place prior to the effective date of RCW 75.20.040 are subject to its requirements. The director periodically may revise fish guard requirements, but the revised requirements would apply only to fish guards put in place after the revisions. Hydroelectric projects licensed by the Federal Energy Regulatory Commission are not subject to the fish guard requirements of RCW 75.20.040. With two exceptions, fish guard requirements relating to food fish are not materially different from fish guard requirements relating to game fish.
 QUESTION 1
Must the director of the Department of Fish Wildlife take civil enforcement action in every instance where the director is aware that a device diverting water from a lake, river, or stream is not equipped with a fish guard as required by RCW 75.20.040?
We conclude that the statutes about which you inquire give the director certain authority and discretion to enforce compliance with requirements relating to fish guards under RCW 75.20.040. However, they do not compel the director to take civil enforcement action in each and every instance of noncompliance.
RCW 75.20.040, the subject of your inquiry, provides:
 A diversion device used for conducting water from a lake, river, or stream for any purpose shall be equipped with a fish guard approved by the director to prevent the passage of fish into the diversion device. The fish guard shall be maintained at all times when water is taken into the diversion device. The fish guards shall be installed at places and times prescribed by the director upon thirty days' notice to the owner of the diversion device. It is unlawful for the owner of a diversion device to fail to comply with this section.
Each day the diversion device is not equipped with an approved fish guard is a separate offense. If within thirty days after notice to equip a diversion device the owner fails to do so, the director may take possession of the diversion device and close the device until it is properly equipped. Expenses incurred by the department constitute the value of a lien upon the diversion device and upon the real and personal property of the owner. Notice of the lien shall be filed and recorded in the office of the county auditor of the county in which the action is taken.
This statute requires a diversion device to be equipped with a fish guard. It also directs the owner of a diversion device to install a fish guard on 30 days notice from the director. Failure to comply with this section constitutes a misdemeanor. RCW 75.10.200(1)(b). If the owner of a diversion device fails to equip it with a fish guard after 30 days notice from the director, the director may take possession of the diversion device and close the device until it is properly equipped. RCW 75.20.040 (emphasis added).
Statutory language that ordinarily is permissive may be given a mandatory construction where the act reflects such an intent on the part of the Legislature. State ex rel. Blume v. Yelle,52 Wn.2d 158, 162, 324 P.2d 247 (1958). We find nothing in RCW 75.20.040 indicating that in using the ordinarily permissive word may, the Legislature intended to impose on the director a mandatory obligation to take civil enforcement action in each and every instance where a diversion device is not equipped with a fish guard as required by RCW 75.20.040. To the contrary, as the court explained in Scannel v. Seattle, 97 Wn.2d 701, 704,648 P.2d 435 (1982):
 Where a provision contains both the words shall and may, it is presumed that the lawmaker intended to distinguish between them, "shall" being construed as mandatory and "may" as permissive.
This presumption applies to RCW 75.20.040. The statute uses the word shall in several instances, describing the obligation of the owner of a diversion device to equip it with a fish guard. By contrast, in describing the director's authority to take action to enforce such a requirement, the statute uses the term may.
Similar permissive language is used in RCW 75.20.061 in authorizing the director to take additional action to remedy certain inadequate fish guards. As is the case under RCW 75.20.040, such permissive language is juxtaposed with mandatory language in the same provision. RCW 75.20.061 provides:
 If the director determines that a . . . fish guard described in RCW 75.20.040. . . . and in existence on September 1, 1963, is inadequate, in addition to other authority granted in this chapter, the director may remove, relocate, reconstruct, or modify the device, without cost to the owner. The director shall not materially modify the amount of flow of water through the device. After the department has completed the improvements, the . . . fish guards shall be operated and maintained at the expense of the owner in accordance with RCW 75.20.040[.]
Our conclusion that the director's civil enforcement authority under these statutes is discretionary rather than mandatory, also is consistent with cases finding discretionary authority under statutes using similarly permissive language. See, for example, State ex rel. Rosbach v. Pratt, 68 Wn. 157, 122 P. 987 (1912).
 QUESTION 2
Does RCW 75.20.040 authorize the director to close a diversion device if the owner of the diversion device fails to equip it with an approved fish guard within 30 days after the director gives the owner notice to do so?
We answer this question in the affirmative. RCW 75.20.040 specifically states:
 If within thirty days after notice to equip a diversion device the owner fails to do so, the director may take possession of the diversion device and close the device until it is properly equipped.
 QUESTION 3
Does the director have authority to compel the owner of a diversion device to equip it with a fish guard where such a guard is required under RCW 75.20.040?
We interpret this question to ask whether by an administrative order or other administrative action, the director may require the owner of a diversion device to equip it with a fish guard where one is required under RCW 75.20.040. For the reasons discussed below, we conclude that the answer to this question is no.
Administrative agencies have only the authority provided to them by the Legislature, either expressly or as a matter of necessary implication from authority expressly granted. Kaiser Aluminum 
Chemical Corp. v. Department of Labor Indus., 121 Wn.2d 776,854 P.2d 611 (1993). In some instances, the Legislature has authorized agencies to issue administrative orders compelling certain actions. For example, under RCW 70.105D.050(1), the Department of Ecology is authorized to issue orders requiring remedial actions with respect to releases of hazardous substances. Similarly, under RCW 76.09.080, the Department of Natural Resources has authority to issue certain stop work orders. However, we have located no statute that expressly or impliedly authorizes the director administratively to compel the owner of a diversion device to install a fish guard. In the absence of any such statute, we conclude that the director lacks this authority.
Although the director may not administratively compel the installation of required fish guards, the director may take a number of related actions that may well prompt such installation. As previously discussed, under RCW 75.20.040, the director may give the owner of a diversion device notice to equip it with a fish guard and if the owner fails to do so within 30 days, the director may take possession of the device and close it until it is properly equipped. Additionally, as to diversion devices in place prior to September 1, 1963, RCW 75.20.061 authorizes the director to reconstruct or modify inadequate diversion devices without cost to the owner of the diversion device.
The director also may have standing to bring a civil judicial action to enjoin a public nuisance and thereby ask a court to order a diversion device to be closed until the owner equips it with an approved fish guard. See Kitsap Cy. v. Kev, Inc.,106 Wn.2d 135, 720 P.2d 818 (1986); State v. Gedarro, 19 Wn. App. 826,579 P.2d 949 (1978).
And finally, criminal enforcement action may be brought against the owner of a diversion device who fails to comply with the fish guard requirements of RCW 75.20.040. See RCW 75.10.200(1)(b).
 QUESTION 4
Are diversion devices that were put in place prior to the effective date of RCW 75.20.040 in 1949, subject to its requirements?
For the reasons explained below, we believe that the answer to this question is yes. Diversion devices existing as of the effective date of RCW 75.20.040 must be equipped with fish guards.
We begin with the principle that absent legislative intent to the contrary, a law is presumed to apply prospectively only. Baker v. Baker, 80 Wn.2d 736, 498 P.2d 315 (1972). However, a statute is not applied retrospectively merely because it draws upon preexisting facts or conditions for its operation, without changing their legal effect. State v. Malone, 9 Wn. App. 122, 131,511 P.2d 67 (1973). An example may be helpful in understanding this principle. In Zahradnik v. Department of Licensing, a licensed wrecking yard operator argued that to require him to place Ryard identification numbers on parts of vehicles that he acquired before the effective date of the act requiring their identification would amount to retrospective application of the law. The court of appeals rejected this argument explaining:
 To apply RCW 46.80.080's record-keeping requirements to parts in Zahradnik's possession on September 21, 1977 would merely draw upon facts antedating the effective date of the statute; there would be no retrospective application of the statute.
Zahradnik v. Department of Licensing, 31 Wn. App. 771, 775-76,644 P.2d 742 (1982). We believe the same is true with respect to the question you pose. Applying RCW 75.20.040 to a diversion device existing as of 1949 would merely draw on facts antedating the statute, without changing their legal effect. It would not amount to a retroactive application of the law. Moreover, nothing in RCW 75.20.040 expresses intention on the part of the Legislature to exempt from the fish guard requirements that it establishes those diversion devices in place at its enactment. Where the Legislature has intended such an exemption, it has made it express. See RCW 77.16.220 (relating to fish guards and screens for the protection of game fish and exempting from its application persons lawfully diverting water from a lake, river, or stream at the time of its enactment).
 QUESTION 5
May the director periodically change the requirements for fish guards to ensure that the guards are efficient and durable?
This inquiry could be asking two very different questions. As explained below, our answer differs depending on which question is being posed.
If this question asks whether the director may revise standards that must be met before a new fish guard or a replacement fish guard receives approval under RCW 75.20.040, we would conclude that the answer is yes. Implicit in the requirement of RCW 75.20.040 that a fish guard be approved by the director is application of standards appropriate to ensure that the guard will function over time to prevent the passage of fish into the diversion device. RCW 75.20.040. We see no reason to conclude that the director remains locked into requirements or standards that become outmoded or inadequate with the passage of time or changes in technology or other circumstances.
On the other hand, this question could be asking whether the director may require owners of fish guards to upgrade functioning fish guards to meet revised standards. Based on the decision of the State Supreme Court in Department of Fisheries v. Chelan Cy. PUD 1, 91 Wn.2d 378, 588 P.2d 1146 (1979), we would answer this question in the negative. In Chelan Cy., the Department sought to require a PUD to upgrade a fishway at a dam that the PUD owned. Although the PUD's fishway initially was adequate to efficiently allow for the passage of fish at the dam, gradual increases in fish runs rendered it inefficient and ineffective. In seeking to require the PUD to upgrade the fishway, the Department relied on RCW 75.20.060, a statute requiring dams and other obstructions to be provided with a durable and efficient fishway approved by the director and requiring the fishway to be maintained in an effective condition . . . to freely pass fish.
In construing RCW 75.20.060, the supreme court considered a related statute, RCW 75.20.061. Under this latter statute, in addition to authority granted elsewhere in chapter 75.20 RCW, the director is authorized to reconstruct or modify a fish guard or fishway in existence as of September 1, 1963 (the effective date of RCW 75.20.061), at no cost to the owner. From these statutes, the Supreme Court concluded that the PUD could not be required to upgrade the fishway. The court held that the PUD's sole responsibility was to maintain the fishway which the court defined only as preserving it in its original state of efficiency. Chelan Cy., 91 Wn.2d at 384.
Although the statutes requiring maintenance of fish guards and fish screens are not identical, they are similar in respects relevant to this inquiry. RCW 75.20.060, the statute construed in Chelan Cy., requires that a fishway be provided. RCW 75.20.040, the statute about which you ask, requires that a diversion device be equipped with a fish guard. Moreover, both are subject to RCW 75.20.061, which provides that once certain fish guards and fishways are upgraded, they are to be maintained by their owners. In short, there is no difference in the language of RCW 75.20.040, governing fish guards, and RCW 75.20.060, governing fishways, that would lead us to conclude that the court would demand more of the owner of a diversion device with respect to maintaining a fish guard than it demanded of the owner of a dam in maintaining a fishway. Indeed, RCW 75.20.060, relating to fishways, uses language indicating more substantial maintenance obligations than does RCW 75.20.040, relating to fish guards. Accordingly, although the statutes involved are not absolutely identical, we conclude that Chelan Cy. controls the answer to this question and dictates that under current statutes, the owner of a diversion device must maintain it in its original state of efficiency, but would not be required to upgrade it to meet revised standards.
 QUESTION 6
Are hydroelectric projects licensed by the Federal Energy Regulatory Commission subject to the fish guard requirements of RCW 75.20.040?
For the reasons explained below, we conclude that RCW 75.20.040 would not apply to these projects.
Under the Federal Power Act, 16 U.S.C. § 791 et seq., certain hydroelectric projects, including those on navigable waters and federal lands, must be licensed by the Federal Energy Regulatory Commission. 16 U.S.C. § 797. In an early case considering the relationship between the Federal Power Act and state laws intended to protect fish, the Washington Supreme Court ruled that the Federal Power Commission (the statutory predecessor of the Federal Energy Regulatory Commission) was empowered to determine measures necessary to protect fish and that in constructing and operating the project, an applicant for a license under the Act was not required to comply with state laws for the protection of fish. Tacoma v. Taxpayers of Tacoma, 43 Wn.2d 468, 493, 262 P.2d 214
(1953). To the same effect, but more recent, is California v. FERC, 495 U.S. 490, 109 L.Ed.2d 474, 110 S.Ct. 2024 (1990). Thus, we conclude that RCW 75.20.040 would not apply to projects licensed by the Federal Energy Regulatory Commission.
Nor is this to say that licensing of these projects under the Federal Power Act affords the state no opportunity to present its position concerning measures necessary to protect state resources. Under 16 U.S.C. § 803(j), licenses issued by FERC are to include conditions for the protection of fish and wildlife. In establishing such conditions, the Federal Energy Regulatory Commission is required to consider (although it is not bound by) recommendations of state fish and wildlife agencies.16 U.S.C. § 803(j); California v. FERC, supra.
 QUESTION 7
Are statutes relating to fish guard requirements for game fish less rigorous than or materially different from statutes relating to fish guard requirements for food fish?
This question seems to assume that certain statutes, presumably, RCW 75.20.040 and .061, discussed at some length in response to your previous questions, govern fish guards for the protection of food fish and that other statutes govern fish guards for the protection of game fish. However, neither of these statutes uses the term food fish. To the contrary, RCW 75.20.040 provides that a diversion device shall be equipped with a fish guard to prevent the passage of fish into the diversion device (emphasis added). On its face then, this statute is not confined to requiring fish guards only where necessary to protect food fish. Instead, it would require fish guards wherever necessary to protect fish from entering a diversion device.
By the same token, however, another statute, RCW 77.16.220, specifically addresses fish guards for the protection of game fish. It states:
 It is unlawful to divert water from a lake, river, or stream containing game fish unless the water diversion device is equipped at or near its intake with a fish guard or screen to prevent the passage of game fish into the device and, if necessary, with a means of returning game fish from immediately in front of the fish guard or screen to the waters of origin. A person who is now otherwise lawfully diverting water from a lake, river or stream shall not be deemed guilty of a violation of this section.
Plans for the fish guard, screen, and bypass shall be approved by the director prior to construction. The installation shall be approved by the director prior to the diversion of water.
The director may close a water diversion device operated in violation of this section and keep it closed until it is properly equipped with a fish guard, screen, or bypass.
Before considering whether these statutes materially differ, it first is appropriate to determine their scope. RCW 77.16.220 and RCW 75.20.040 relate to the same subject fish guards. Where statutes relate to the same subject, courts endeavor to harmonize them, giving effect to each to the fullest extent possible. Only where the court cannot reasonably harmonize the statutes, will it determine that the statutes conflict and apply one to the exclusion of the other. Martin v. Triol, 121 Wn.2d 135,847 P.2d 471 (1993). These rules lead us to conclude that RCW 75.20.040 governs fish guards in waters containing food fish alone or food fish and game fish, and that RCW 77.16.220 governs fish guards in waters containing only game fish. Such a construction gives effect to each statute to the extent possible and avoids conflict that otherwise would exist between the two.
Having examined the scope of these provisions, we return to your question whether the fish guard requirements governing diversions from waters containing only game fish are less rigorous or materially different from the fish guard requirements governing diversions from waters containing food fish or food fish and game fish. With the two exceptions noted below, the provisions do not seem materially different to us. First, RCW 77.16.220 contains a grandfather clause. It exempts from its fish guard requirements those persons otherwise lawfully diverting water as of 1947. See Laws of 1947, ch. 275, a 61. RCW 75.20.040 contains no grandfather clause. Second, RCW 75.20.040 entitles the director to recover costs of closing a diversion device until it is properly equipped with a fish guard and provides for a lien on the owner's property in the amount of those costs. No similar provision appears in RCW 77.16.220.
We hope that this opinion will be of assistance to you.
Sincerely,
MAUREEN HART Senior Assistant Attorney General