136 P.3d 152 (2006)
Julie SAVLESKY, Janice Stotts, Gary Kazen, Patricia Wilber, Plaintiffs,
Cheryl Delyria and Judy Koch, Appellants,
v.
STATE of Washington, WASHINGTON SCHOOL FOR THE DEAF, Defendant,
State of Washington, Washington School for the Blind, Respondent.
No. 32714-7-II.
Court of Appeals of Washington, Division 2.
June 14, 2006.
*153 Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan LLP, Portland, OR, for Appellant.
Warren Howard Jr Fischer, Attorney at Law, Olympia, WA, for Respondent.
HOUGHTON, P.J.
¶ 1 Teachers Cheryl Delyria and Judy Koch[1] appeal the trial court's summary judgment order dismissing their claims against the Washington State School for the Blind (School). They argue that state law requires that the School pay them the same as the Vancouver School District pays its teachers. We agree and reverse and remand for further proceedings.

FACTS
¶ 2 Located in Vancouver, the School educates blind and partially sighted students up to the age of 21. It has approximately 70 campus residential students and serves about 275 students through its off-campus services. There are 18 on-campus teachers, seven outreach teachers who provide off-campus services, and one on-campus speech and language pathologist. The School, as a state agency, relies on legislative funding; it does not have any levy or taxing authority.[2]
¶ 3 RCW 72.40.028 governs the School's certificated employees' qualifications and salaries. It provides that "[s]alaries of all certificated employees shall be set so as to conform to and be contemporary with salaries paid to other certificated employees of similar background and experience in the school district in which the program or facility is located." RCW 72.40-.028. The School is located in the Vancouver School District (District).
¶ 4 In 1987, the legislature enacted former RCW 28A.58.0951, later recodified as RCW 28A.400.200 (2002). That statute authorizes local school districts to exceed a statewide salary limitation by entering into supplemental contracts for "additional time, additional responsibilities or incentives" (TRI). RCW 28A.400.200(4). The statute also provides that "[s]upplemental contracts shall not cause the state to incur any present or future funding obligation." RCW 28A.400.200(4). Since 1998, the District employees received TRI compensation-an average of $2,710 per year.[3]
¶ 5 The District's agreement with its certificated employees specifies that TRI duties are those that occur outside the regular 180-day contract year or regular school hours. Local school districts make their TRI payments from maintenance and operations levy funds. The School, however, has no levy authority or geographically limited property tax base.
¶ 6 Currently, the School's employees perform work equivalent to that of the District's employees, but they do not receive any TRI payments.[4] In 2001, the School and its Teachers' Association signed a collective bargaining agreement, effective August 1, 2001 to July 30, 2003. That agreement allowed School employees to earn exchange time for activities outside their regular workday. The bargaining agreement also limited this exchange or compensatory time to three paid workdays before the school year.
¶ 7 On May 27, 2003, Delyria and Koch filed their class action lawsuit,[5] seeking: (1) *154 declaratory relief finding that the School violated RCW 72.40.028, (2) an award of all unpaid salaries, (3) a penalty equal to the amount of the unpaid salaries, (4) and costs and fees.
¶ 8 The School moved for summary judgment, and Delyria and Koch moved for partial summary judgment.[6] After agreeing with the parties' stipulation that a purely legal issue faced the court, it noted:
My interpretation of RCW 72.40.028 in regard to salaries is that at the time that this was enacted in 1980 there was no TRI payment situation, that that came about some five years later, and at the time that the TRI payments were instituted the legislature, if they had intended, could have clearly indicated that the State schools were a part of this. They did not do so.
The term "salaries" is somewhat ambiguous, but my interpretation is that it meant a salary based upon one's similar background and experience, that is, having to do with the education and tenure or time in a particular position by teachers. The TRI payment situation is one that came about with the intent to deal with many of the realities of being a teacher and working long hours beyond what might be characterized as a formal workday or workweek, and I'm certainly not saying that teachers at the School for the Blind don't put in lots of extra time too, but there are other forms of compensation. Whether or not they're adequate, again, is not before this Court.
It's my finding that RCW 28A.400.200 does not apply to the School for the Blind. The TRI payments are a separately administered program or / and involve separate issues, that there might very well be a need for a fix here, but I think it has to be addressed to the legislature rather than the Court.
Report of Proceedings (RP) at 23-24. The trial court granted the School's motion and denied Delyria and Koch's motion for partial summary judgment.
¶ 9 Delyria and Koch appeal.

ANALYSIS
¶ 10 We address whether RCW 72.40.028 and RCW 28A.400.200 entitle School employees to receive the same TRI payments that the District has paid its teachers since 1998. Delyria and Koch argue that the law entitles them to the same pay as District employees and that the trial court erred in denying their motion for partial summary judgment on liability and in granting the School's motion instead.

STANDARD OF REVIEW
¶ 11 We review de novo a summary judgment order, engaging in the same inquiry as the trial court, taking the facts and all reasonable inferences in the light most favorable to the nonmoving party. Allstate Ins. Co. v. Raynor, 143 Wash.2d 469, 475, 21 P.3d 707 (2001). A court properly grants summary judgment "if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Summary judgment is proper if reasonable minds could reach only one conclusion. Kalmas v. Wagner, 133 Wash.2d 210, 215, 943 P.2d 1369 (1997).

STATUTORY CONSTRUCTION
¶ 12 We construe statutes de novo as a question of law. Rettkowski v. Dep't of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996). We give statutory words their plain and ordinary meaning unless we perceive a contrary intent within the statute. Erection Co. v. Dep't of Labor & Indus., 121 Wash.2d 513, 518, 852 P.2d 288 (1993). If the statutory language is clear and unambiguous, we determine the meaning of the statute from its language alone and we do not consider legislative history. Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wash.2d 572, 582, 790 P.2d 124 (1990).
¶ 13 In construing a statute, we give effect to all the statutory language so that no provision is rendered meaningless. Whatcom County v. City of Bellingham, 128 *155 Wash.2d 537, 546, 909 P.2d 1303 (1996). And we read statutes relating to the same subject as complementary and not in conflict. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 630, 869 P.2d 1034 (1994).

Plain and Unambiguous Language
¶ 14 Delyria and Koch argue that the School's refusal to give them TRI pay cannot be justified because RCW 72.40.028 plainly and unambiguously provides that employees with similar background and experience at the School and the District must receive equivalent salaries. RCW 72.40.028 provides in relevant part:
All teachers at the state school for the deaf and the state school for the blind shall meet all certification requirements. . . . Salaries of all certificated employees shall be set so as to conform to and be contemporary with salaries paid to other certificated employees of similar background and experience in the school district in which the program or facility is located.
¶ 15 We begin by noting that under the plain language of RCW 72.40.028, the phrase "similar background and experience" modifies "certificated employees." The most natural and grammatically correct reading of the statute leads to the conclusion that the statute applies to those School and District employees who have similar background and experience.[7] Reading the plain and unambiguous statute alone would lead us to conclude that Delyria and Koch are entitled to salaries comparable to those of District employees.

The School's Counterarguments to the Plain Language
¶ 16 The School raises several arguments contrary to this conclusion, but they do not persuade us. First, it argues that the School cannot give TRI pay to its employees because under RCW 28A.400.200, the State cannot be obligated to make such payments. RCW 28A.400.200 provides in relevant part:
(1) Every school district board of directors shall fix, alter, allow, and order paid salaries and compensation for all district employees in conformance with this section.
. . . .
(3)(a) The actual average salary paid to certificated instructional staff shall not exceed the district's average certificated instructional staff salary used for the state basic education allocations. . . .
. . . .
(4) Salaries and benefits for certificated instructional staff may exceed the limitations in subsection (3) of this section only by separate contract for additional time, additional responsibilities, or incentives. Supplemental contracts shall not cause the state to incur any present or future funding obligation. Supplemental contracts shall be subject to the collective bargaining provisions of chapter 41.59 RCW.... No district may enter into a supplemental contract under this subsection for the provision of services which are a part of the basic education program required by Article IX, section 3 of the state Constitution.
(Emphasis added.)
¶ 17 The School argues that the legislature did not intend the School's employees to receive TRI payments because when the legislature enacted former RCW 72.05.140,[8] the pay parity statute, in 1980, it had not yet enacted legislation authorizing TRI payments. Thus, the School argues that "[t]he [l]egislature simply could not have contemplated RCW 72.05.140 to include supplemental TRI payments as additional salary." Resp't's Br. at 10. We disagree.
¶ 18 We presume the legislature considered its prior enactments when enacting *156 new legislation. State v. Roth, 78 Wash.2d 711, 715, 479 P.2d 55 (1971); State v. Pub. Util. Dist. No. 1, 91 Wash.2d 378, 383, 588 P.2d 1146 (1979). If the legislature wanted to exclude the application of RCW 28A.400.200(4) from the pay parity requirement in the former RCW 72.05.140, it could have done so. That the legislature did not amend the pay parity requirement when it enacted the TRI provision demonstrates its intent not to render the two statutes mutually exclusive.
¶ 19 Moreover, the legislature enacted the pay parity statute, RCW 72.40.028, before the TRI authorization statute, RCW 28A.400.200. Had the legislature intended to exclude employees at the School and other state institutions from receiving TRI payments, the statute would specify that exclusion. Because the pay parity statute existed at the time of the new enactment, we presume that the legislature knew that all salary increases made available to District employees must likewise be available to School employees. Clearly, TRI payments may qualify as "salary" for the purposes of the pay parity statute. Essentially, the standard base salary for teachers and TRI payments are indistinguishable to the extent that both are "fixed compensation paid regularly." WEBSTER'S THIRD NEW INTERN'L DICTIONARY at 2003 (2002). Accordingly, there must be a comparable salary increase made available to School employees if made available to District employees through TRI payments. The District may obtain the necessary funds to offer its employees TRI payments through geographically based levies. The School does not have this option. If alternate School funds cannot meet this financial need, the legislature is obligated to supply the funds. We presume the legislature knew that it had accepted this obligation when it enacted RCW 28A.400.200.
¶ 20 The School further counters that the legislature expressed its intent to exclude its employees from TRI payments when the legislature "enacted special provisions to deal with additional work, if any, to be performed by [School] teachers." Resp't's Br. at 11 (emphasis omitted). The School argues that in enacting RCW 72.40.110, the legislature made a policy choice to exclude School employees from receiving TRI payments and instead to provide them with compensatory (or exchange) time and protection under collective bargaining agreements. But the School's argument fails because it does not offer any evidence that these different measures were enacted to replace TRI payments. That the legislature merely enacted a different compensation method for School employees does not sufficiently show legislative intent to exclude School employees from receiving TRI payments.
¶ 21 Finally, the School counters that "the overall legislative scheme" demonstrates that the legislature did not intend School employees to receive TRI payments. Resp't's Br. at 14. In support, the School cites several provisions in RCW 28A.400.200(4) to show that the legislature meant to cover only the school districts:
1. TRI payments, by virtue of the express language of RCW 28A.400.200(4), cannot cause the State to incur any present or future funding obligations. . . .
2. TRI payments, under RCW 28A.400.200(4), are subject to collective bargaining under RCW 41.59, a chapter which does not apply to state employees.[9]
3. TRI payments cannot pay for basic education ... and are paid out of local maintenance and operation levies or other local funds.... The [School] does not have local levy authority and has no geographically limited tax base.
Resp't's Br. at 15.
¶ 22 Delyria and Koch argue that the statutory language declaring that the state shall incur no funding obligation does not preclude paying TRI funds to School employees. They assert that the disclaimer provision of the state's funding obligation in RCW *157 28A.400.200(4) needs to "be read in conjunction with the language in RCW 28A.400.200(1), which states that the entire section concerns the operation of school districts." Appellants' Br. at 20. According to Delyria and Koch, the legislative intent behind the funding obligation disclaimer is that obligations to fund local school districts will not burden the state. They argue that the language of RCW 28A.400.200(1) makes it applicable only to local school districts. Therefore, the prohibition on incurring further state obligation does not apply to the School or to other state institutions. They assert that the legislature intended to apply this disclaimer only to the local school districts because the school districts have local levy authorities and geographically limited tax bases. Thus, they contend that the legislature would have amended either or both of the statutes if it had intended to substantially limit the pay parity requirement of RCW 72.40.028 and that the absence of any such amendment or language shows that it did not intend to exclude School employees from receiving TRI payments.[10] We agree.
¶ 23 Further, we presume the legislature considered the pay parity statute when it enacted the TRI statute. See Roth, 78 Wash.2d at 715, 479 P.2d 55. There was no attempt to amend the prior statute or to exclude employees of state institutions from TRI eligibility in the new statute. Consequently, we presume that the legislature knew of and accepted its obligation to provide funding for TRI benefits for employees of schools unable to raise such funds through levies. This interpretation also comports with the rule of statutory construction that we must render statutes on the same subject complementary and not in conflict. See Waste Mgmt. of Seattle, 123 Wash.2d at 630, 869 P.2d 1034.
¶ 24 Reversed and remanded for further proceedings.
We concur: ARMSTRONG and PENOYAR, JJ.
NOTES
[1] Delyria and Koch filed a class action lawsuit on behalf of 59 current and 33 former employees of the Washington State School for the Blind.
[2] On occasion, the School receives gifts and grants.
[3] According to the amended complaint, the TRI payment under the 2001-2003 comprehensive professional agreement between the District and the Vancouver Education Association totaled $2,520 per teacher.
[4] The School asserts that it has a four and one-half day workweek and smaller class sizes than the District. But it does not claim that its employees put in fewer hours than District employees.
[5] Delyria started working as a teacher at the School in August 1996, whereas Koch began in 1993. Both took some exchange time for activities outside the regular working hours pursuant to the collective bargaining agreement.
[6] Delyria and Koch sought partial summary judgment as to liability.
[7] The last antecedent rule of statutory construction gives our construction further support. That rule provides that qualifying words and phrases refer to the language immediately preceding the qualifier, unless a contrary intention appears in the statute. In re Estate of Kurtzman, 65 Wash.2d 260, 264, 396 P.2d 786 (1964). Because "certificated employees" immediately precedes the phrase "similar background and experience," the last antecedent rule supports concluding that the phrase modifies "certificated employees."
[8] The relevant provision is identical to that in the current RCW 72.40.028.
[9] The purpose of this chapter is stated as follows:

It is the purpose of this chapter to prescribe certain rights and obligations of the educational employees of the school districts of the state of Washington, and to establish procedures governing the relationship between such employees and their employers which are designed to meet the special requirements and needs of public employment in education.
RCW 41.59.010.
[10] In addition to arguments focused on statutory construction and context, Delyria and Koch also advanced arguments regarding policy, fairness, and equity. Because we decide this case through statutory construction, we do not address these alternative arguments.